LINCOLN *v.* LINCOLN.

(No. DR-58971—Decided January 5, 1973.)

Common Pleas Court of Stark County.

*Mr. Harry Schmuck,* for plaintiff.
*Mr. Ray Marchbank,* for defendant.

MILLIGAN, J. The plaintiff-husband filed his complaint on or about May 12, 1971, seeking a divorce and the custody of minor children. The complaint, alleging that plaintiff had been a resident of the state of Ohio for more than one year and of Stark County for more than 90 days, was served on the defendant-wife, a resident of New York state, by certified mail, May 19, 1971.

An amended complaint was filed on or about November 10, 1971, but there is no proof of service thereupon.

On August 4, 1972, defendant—still a resident of the state of New York—filed her answer and counterclaim, requesting a divorce and the custody of the children, together with other relief. Her counterclaim was served personally on the plaintiff on August 9, 1972.

The parties never lived together in Ohio as man and wife, and the last marital domicile was the state of New York. The plaintiff moved to Ohio (by his own admission) on November 17, 1970.

At the commencement of the contested divorce, plaintiff was granted leave to dismiss his complaint and amended complaint, and the case proceeded on the defendant's counterclaim.

## Issue

Where a plaintiff, who has not been a resident of the state of Ohio for one year before the filing of his complaint, dismisses the complaint and the amended complaint at the commencement of the trial, and after the filing and service of a counterclaim for divorce by the nonresident defendant-spouse, does the court retain jurisdiction to rule upon the nonresident defendant's prayer for divorce and custody?

R. C. 3105.03, the residence-jurisdiction section of the Ohio Revised Code, provides, in part, as follows:

"Except in an action for alimony alone, the *plaintiff* in actions for divorce and annulment shall have been a resident of the state at least one year immediately before filing the petition. Actions for divorce, annulment or for alimony shall be brought in the county of which the *plaintiff* is and has been a bona fide resident for at least ninety days immediately preceding the filing of the petition, or in the county where the cause of action arose." (Emphasis added.)

There appears to be no legislative restriction as to residence when filing a counterclaim, nor do the Ohio Rules of Civil Procedure (Civ. R. 13) limit venue.

If the jurisdiction of the common pleas court depends upon the residence and venue established by the plaintiff, then this court is clearly without jurisdiction to determine the issue of divorce. It would further have no jurisdiction to grant any ancillary relief, such as the custody of children. *Holderle* v. *Holderle*, 11 Ohio App. 2d 148.

The general rule seems to be that residency requirements apply to the initiation of the action, so that even a voluntary dismissal of the principal action will not deprive the court of jurisdiction, once attached, to proceed upon a counterclaim.

"However, where the plaintiff files suit for divorce and takes a nonsuit after the defendant has filed a cross-action, the court cannot acquire jurisdiction to grant a divorce to the defendant without proof that at least one of the parties to the action has resided in the state and

county for the prescribed statutory period." 2A Nelson, Divorce and Annulment, Section 21.30, p. 357.

However, at least one court has held, in a similar case, that a nonresident who files a counterclaim for alimony may be granted relief, notwithstanding the dismissal of the complainant's divorce action, where the plaintiff lacked by six months the necessary year of residence. *Childers* v. *Childers*, 112 Ohio App. 229.

In that case, the court of appeals cited, approvingly, *Lampe* v. *Lampe*, 136 N. E. 2d 470, where paragraph four of the headnotes states:

"Wherever possible, a court will retain jurisdiction as to subject matter of an action until it is fully adjudicated, and will prevent parties from being forced to file multiple lawsuits to obtain their relief."

This court is satisfied that the logic of this precedent is compelling, not only where the counterclaim is for alimony, but, also, where the counterclaim is for a divorce.

To deny jurisdiction at this late date in an action about which the parties have anguished for over a year and to dismiss the issues without resolution, leaving the parties to self help remedies, would neither be just, nor in the interests of the parties and the children.

### Ultimate Facts

Upon the evidence, the court finds the following ultimate facts, as they relate to the issue of divorce and the custody of the minor children:

1. The parties separated, while living in New York, around November 12, 1970. Prior to that time, there had been numerous altercations between the parties, and the defendant had, from time to time, suffered bruises.

2. Shortly thereafter, the plaintiff sequestered the children and sent them to his mother in Stark County, Ohio. He later returned to Ohio. During this period, the defendant went with a girlfriend to Georgia for a period of several weeks. The defendant has been unable to regain the children, and has continued to live in New York—visiting the children infrequently. She does not drive and depends upon bus transportation.

216

3. On August 26, 1971, the defendant was delivered of her third child, and there is some dispute about the paternity thereof, although the testimony is unequivocal that the parties were together as late as November 3, 1970.

4. Letters written by defendant to plaintiff from Georgia, seeking a reconciliation and containing language of confession, which was intended to be reconciliatory, were introduced. There is no substantial evidence of unfaithfulness by the defendant.

5. In contra-distinction, the plaintiff has lived for almost two years with one Linda Smith, openly and without apology. They currently share a two bedroom trailer with the parties' two children. The plaintiff confesses his love of the paramour and his desire to marry her, stating, however, that the children are his first interest and that, if the court would require it, he would be willing to move out of the trailer and leave the children in the care of Linda.

He has encouraged the children to call Miss Smith "mother," and the children call their mother "Emily."

6. The children are physically well cared for, in good health, and enrolled in school.

Conclusions of Law

The court concludes and orders as follows:

A. The court has jurisdiction of the parties and the subject matter.

B. The plaintiff has been guilty of gross neglect of duty and extreme cruelty; and the defendant is entitled to a divorce.

C. The youngest child is the issue of the parties.

D. The best interests of the children will be served by their custody being granted to the defendant mother, subject to reasonable visitation.

E. The plaintiff will be ordered to pay, by way of support, the sum of $65 per month per child, plus necessary medical, dental and hospital expenses, plus 1% poundage, in care of the clerk of courts of Stark County, commencing January 15, 1973, upon which date the plaintiff will be ordered to deliver custody of the children, together with their personal effects, to the defendant.

F. The parties own virtually no property. The defendant receives aid for dependent children and is unemployed. The plaintiff has been recently employed as a hearing aid salesman, earning $500 per month. The trailer is rented and furnished.

G. By way of alimony, the plaintiff will be ordered to pay to the defendant, as and for partial attorney fees, the sum of $300, for which amount judgment is rendered.