[Cite as *Ryan v. Ryan*, 2024-Ohio-5691.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

James Michael Ryan, Jr., :

    Plaintiff-Appellant, : No. 23AP-554
(C.P.C. No. 21DR-4418)

v. :

                               (REGULAR CALENDAR)

Tara Ryan, :

    Defendant-Appellee. :

James Michael Ryan, Jr., :

    Plaintiff-Appellant, : No. 24AP-72
(C.P.C. No. 21DR-4418)

v. :

                               (REGULAR CALENDAR)

Tara Ryan, :

    Defendant-Appellee. :

D E C I S I O N

Rendered on December 5, 2024

**On brief**: *James Michael Ryan, Jr.*, pro se. **Argued**: *James Michael Ryan, Jr.*

**On brief**: *Atkins and Atkins, Attorneys At Law, LLC*, and *Arianna Atkins*, for appellee. **Argued**: *Arianna Atkins*.

APPEALS from the Franklin County Court of Common Pleas
Division of Domestic Relations

EDELSTEIN, J.

{¶ 1} Plaintiff-appellant, James Michael Ryan, Jr., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting a divorce and terminating his marriage to defendant-appellee, Tara Ryan n.k.a. Hurley.

Appellant also appeals from a judgment denying his Civ.R. 59 motion for new trial. For the reasons that follow, we vacate the judgment denying appellant's motion for a new trial, and affirm in part and reverse in part the decree of divorce.

## I. Facts and Procedural History

{¶ 2} Appellant and appellee were married on September 21, 1992 in Franklin County, Ohio. On December 23, 2021, appellant filed a complaint for divorce. All children born during the marriage had emancipated by the time appellant commenced the action for divorce. On February 7, 2022, appellee filed an answer and counterclaim for divorce.

{¶ 3} Appellant proceeded pro se throughout the case while appellee was represented by counsel. During the marriage, appellee purchased property at 8 Hilltop Cottages, Great Munden, Hertz, in the United Kingdom ("U.K."). Appellee claimed 8 Hilltop Cottages was her separate property while appellant claimed the property was marital.

{¶ 4} After filing his complaint, appellant filed a motion asking the court to decide "the question of the jurisdiction of this Trial Court," because appellee lived in the U.K. (Emergency Mot. for Immediate, Indefinite Stay at 1.) Appellant also filed several interlocutory appeals while the divorce case was pending. This court dismissed all of appellant's interlocutory appeals for lack of a final appealable order.[1] On April 1, 2022, appellee filed a motion for an award of attorney fees pursuant to R.C. 2323.51, asserting the pleadings and appeals appellant had filed in the divorce case amounted to frivolous conduct.

---

[1] Appellant filed appeals from the following while the divorce case was pending: (1) a non-existent entry denying his partial motion for summary judgment; (2) a notation on the docket describing his answer to appellee's counterclaim as a counterclaim and appellee's statement that she lived in the U.K.; (3) a trial court entry denying his motion to continue a pre-trial hearing; (4) a notation on the docket titled "Judicial Case Disposition"; (5) a magistrate's order denying his motion to compel; (6) a trial court entry denying his objection and motion to set aside the magistrate's order; (7) a trial court entry denying his motion for default judgment; and (8) a trial court entry denying his motion for leave to amend his complaint. As noted, this court dismissed each appeal for lack of a final appealable order. (Journal Entry of Dismissal in case No. 22AP-129; Journal Entry of Dismissal in case No. 22AP-211; Journal Entry of Dismissal in case No. 22AP-390; Journal Entry of Dismissal in case No. 22AP-610; Journal Entry of Dismissal in case No. 23AP-99; Journal Entry of Dismissal in case No. 23AP-314; Journal Entry of Dismissal in case No. 23AP-429; Journal Entry of Dismissal in case No. 23AP-510.) Appellant also filed a notice of appeal with the Supreme Court of Ohio from our journal entry of dismissal in case No. 23AP-314; the Supreme Court declined to accept jurisdiction. (Supreme Court case No. 2023-0947.) Appellant also filed an original action asking this court to issue a writ of mandamus to compel the trial judge to take certain action, which we dismissed. (Journal Entry in case No. 23AP-206.)

{¶ 5} During an April 4, 2022 pre-trial hearing, appellee's counsel informed the court that appellant had recently closed the parties' joint checking account at Huntington National Bank ("Huntington") and "take[n] the proceeds from -- the balance of the money from that." (Apr. 4, 2022 Hearing Tr. at 23.) Appellee alleged appellant's conduct violated the court's standard mutual restraining order, which enjoined the parties from removing, disposing of, lessening the value of, or in any manner secreting the assets of either spouse. Appellant denied either closing the account or taking the money. (Apr. 4, 2022 Hearing Tr. at 23-24.)

{¶ 6} Following the April 4, 2022 hearing, appellant filed several documents concerning the parties' joint Huntington account. On May 5, 2022, appellant filed a document titled "Plaintiff's Notice to the Court," stating that, on March 15, 2022, someone changed his address on the joint Huntington account to the address of appellee's attorney's law firm: 490 City Park Ave., Columbus, Ohio 43215. On June 6, 2022, appellant filed a motion asking the court to hold appellee in contempt of the court's standard mutual restraining order because he believed appellee had changed his address on the account.

{¶ 7} On June 22, 2022, appellant filed a document titled "Plaintiff's Filing of Claim Against The Huntington National Bank as to Marital Interests Assets." Appellant alleged in the document that, in March 2022, Huntington withdrew $775.68 from the parties' joint account resulting in an account balance of $0.00, labeled the transaction as "ACCOUNT CLOSURE," changed appellant's mailing address to 490 City Park Avenue, issued a cashier's check "payable to James M. Ryan Jr. in the amount of $775.68," and sent the check to appellant at the 490 City Park Avenue address. (Pl.'s Filing of Claim at 3.) Appellant alleged that Huntington's unauthorized actions "denied the marital estate of the sum of * * * ($775.68)." (Pl.'s Filing of Claim at 6.) Appellant also alleged that Huntington engaged in "the probability of international money laundering" when it wired money to the U.K. in 2017 pursuant to appellee's instructions. (Pl.'s Filing of Claim at 6.)

{¶ 8} On September 2, 2022, appellant filed a Civ.R. 55 motion for default judgment against Huntington. Huntington responded to the motion for default judgment, noting it was not a party to the divorce case.

{¶ 9} On October 25, 2022, appellant issued a subpoena to Huntington requesting that Huntington produce and permit inspection of the documents or information identified

on the attached exhibit A.[2]  Appellant filed a motion to compel Huntington to respond to the subpoena on December 27, 2022.  Huntington responded to the motion to compel on January 11, 2023, noting that several of the requested items amounted to improper interrogatories.

{¶ 10} On February 10, 2023, the magistrate appointed to the divorce case issued an order denying the motion to compel.  Appellant filed an objection to the magistrate's order and a motion to set aside the magistrate's order on February 24, 2023.  On April 26, 2023, the trial court denied appellant's objection and motion to set aside the magistrate's order.

{¶ 11} On March 8, 2023, appellant filed a motion for leave to amend his complaint "to add" Huntington, and certain Huntington employees, as "new Defendants."  (Mot. for Leave to Amend Compl. at 2.)  The trial court denied the motion for leave, noting that any claim appellant "may or may not have against The Huntington National Bank would not fall within the jurisdiction of this Court."  (Decision & Entry at 3.)

{¶ 12} On March 9, 2023, the court issued a case management order stating the case was scheduled for an in-person contested trial on July 17, 18, and 19, 2023, at 1:30 p.m. each day.  The case management order further informed the parties that no continuance of the trial dates would be granted "without written agreement of the parties or prior approval by the Court."  (Case Management/Pre-Trial Discovery Order at 3.)

{¶ 13} On April 6, 2023, appellant filed a motion asking the court to determine appellee's United States lawful permanent resident status.  The court denied the motion, noting it did not have jurisdiction "to issue rulings regarding an individual's citizenship status."  (Apr. 26, 2023 Jgmt. Entry at 1.)  On June 23, 2023, appellant moved to continue the trial scheduled for July 17, 18, and 19, 2023.  The court denied appellant's motion for a continuance.  On July 17, 2023, at 1:34 p.m., the court issued a judgment entry denying appellant's motion for default judgment against Huntington.

{¶ 14} Appellant and appellee both appeared for the July 17, 2023 evidentiary hearing.  At the start of the hearing, appellant attempted to hand the court a notice of appeal of the court's entry denying his motion for default judgment.  Appellant acknowledged he

---

[2] The items requested on exhibit A included requests that Huntington "provide the name of any person that made any statement" that caused Huntington to change appellant's address on the joint account and "provide the name of any person that requested Huntington close the Huntington joint account." (Subpoena, Ex. A.)

had not yet filed the notice of appeal with the clerk's office but argued that by handing the notice of appeal to the trial court, "obviously jurisdiction [was] transferred to the appeals court." (July 17, 2023 Tr. at 4.) The court informed appellant that jurisdiction had "[n]ot necessarily" transferred and instructed the parties to proceed with the hearing. (July 17, 2023 Tr. at 4.) The parties discussed the pending motions, and appellant and appellee both presented their opening statements at the July 17, 2023 hearing.[3]

{¶ 15} During the July 17, 2023 hearing, the court informed the parties that it could "start early tomorrow" and asked if the parties wanted to "shoot on starting at 11:00 tomorrow?" (July 17, 2023 Tr. at 106-07.) Appellant responded stating "[s]ure," and appellee's attorney responded stating "[t]hat works for us." (July 17, 2023 Tr. at 107.) At the end of the July 17, 2023 hearing, the court reminded the parties that they would "continue tomorrow at about 11:00" and told the parties, "[s]ee you tomorrow at 11:00." (July 17, 2023 Tr. at 113-14.) Appellant replied to the court stating, "[g]ood afternoon. I'll see you tomorrow morning." (July 17, 2023 Tr. at 114.)

{¶ 16} The following day, appellee appeared for the 11:00 a.m. trial, but appellant did not appear. At the start of the July 18, 2023 hearing, the court noted its bailiff had "called the case in the hallway several times at 12:00. It is now 12:15, Mr. Ryan is not present, and we are ready to proceed with day two of our trial." (July 18, 2023 Tr. at 120.) The court informed appellee that she could proceed on her counterclaim. Appellee presented testimony from herself, her father James Hurley, and her daughter-in-law Vivian Patrick.

{¶ 17} Appellee testified that, in 1996, the parties purchased a residence located on Roxbury Road in Columbus, Ohio for $310,000. Appellee stated the parties refinanced the marital home "several times" over the years. (July 18, 2023 Tr. at 124.) In 2012, the Roxbury property "went into foreclosure" when the parties owed $643,500 on the mortgage. (July 18, 2023 Tr. at 124.) In summer 2012, appellee's "father gave [her] a gift" of $764,950 "to solve [the foreclosure] and other financial issues that [appellee] was involved in." (July 18, 2023 Tr. at 128.) Appellee stated she used "[$]515,000" from her gift to pay off the mortgage and get the Roxbury property out of foreclosure. (July 18, 2023 Tr. at 130.)

---

[3] Two fire alarms interrupted the July 17, 2023 hearing.

{¶ 18} The parties sold the Roxbury property on October 28, 2016, and received $666,607.46 in proceeds from the sale. The parties deposited the sale proceeds into their joint Huntington account. Shortly thereafter, appellee began "making plans to buy the property in England" and transferred a total of $471,000 from the parties' joint account to her personal bank account. (July 18, 2023 Tr. at 132-33; Trial Ex. I; Pl.'s Ex. 7.) On March 9, 2017, appellee wired $454,322.28 from her personal account to a U.K. bank to purchase 8 Hilltop Cottages. (July 18, 2023 Tr. at 133-34; Trial Exs. L, M.) Appellee asked the court to classify 8 Hilltop Cottages as her separate property.

{¶ 19} Appellee also informed the court that, in February 2017, appellant "took" $122,500 of "[her] funds" from the parties' joint account and spent the money "[o]n himself." (July 18, 2023 Tr. at 135, 137; Pl.'s Ex. 7.) To support her claim, appellee relied on plaintiff's exhibit 7. Plaintiff's exhibit 7 was a bank statement demonstrating that from February 15 to 21, 2017 the parties' joint account was reduced by $123,300. However, the specific transactions had been redacted from the exhibit. (July 18, 2023 Tr. at 135; Pl.'s Ex. 7.) At the conclusion of the July 18, 2023 hearing, the court took the matter under advisement and struck the hearing scheduled for July 19, 2023.

{¶ 20} On July 20, 2023, appellant filed a motion to reinstate the trial and submitted his own affidavit in support of the motion. Appellant alleged in the affidavit that he arrived 20 minutes early to check in for the July 18, 2023 trial, but the "doors to Courtroom #68 remained locked at the time of [his] early arrival to 'check in' " and "remained locked to [him] including at the 11:00AM, July 18, 2023 time scheduled for trial." (July 20, 2023 Appellant Aff. at ¶ 8.) Appellee filed a memorandum contra appellant's motion. Appellee noted the courtroom doors were not locked, because she was "able to enter the courtroom" door and "check-in with the Bailiff" at 11:00 a.m. on July 18, 2023. (Memo Contra Mot. to Reinstate at 2.)

{¶ 21} On September 19, 2023, the court issued a judgment entry and decree of divorce granting the parties a divorce and dividing the parties' assets and debts. The court found the 2012 gift of $764,950 from Mr. Hurley to appellee was appellee's separate property. The court further found that appellee used her separate gift to pay off the mortgage on the Roxbury property and determined this payment "created a separate property interest for [her]" in the Roxbury property. (Decree at 5.) The court concluded

that the $666,607.46 in sale proceeds from the Roxbury property in October 2016 was therefore appellee's separate property. Because appellee transferred $471,000 of the $666,607.46 to her separate account, and used these funds to purchase 8 Hilltop Cottages, the court concluded that 8 Hilltop Cottages was appellee's separate property because "it was purchased with funds [appellee] received as a gift from her father." (Decree at 5.)

{¶ 22} Although appellant did not appear for trial, the court explained that the issue regarding the $122,500 "had been addressed at previous hearings where [appellant] was present" and that appellant "did not deny taking the money."[4] (Decree at 6.) The court determined the $122,500 appellant withdrew from the parties' joint account came from the "proceeds of the sale of [the Roxbury property]" and was appellee's "separate property." (Decree at 5.) The court ordered appellant to pay appellee the $122,500 at a monthly rate of $1,020.83 until paid in full. (Decree at 15.)

{¶ 23} The court granted appellee's R.C. 2323.51 motion for sanctions and found an award of attorney fees equitable under R.C. 3105.73. The court ordered appellant to pay appellee $10,000 in attorney fees. The court denied appellant's July 20, 2023 motion to reinstate the trial and specifically found "[appellant's] claims that the door to the Courtroom were locked to not be credible as the Court observed numerous people coming in and out of the Courtroom" on July 18, 2023. (Decree at 17.) The court noted it was not the "Court's practice to lock the doors to the Courtroom while the Court [was] in session" and concluded that appellant made the "decision to leave before the case was called" on July 18, 2023. (Decree at 17.)

{¶ 24} Appellant filed a notice of appeal from the court's judgment entry and decree of divorce on September 19, 2023. This court docketed the appeal as case No. 23AP-554. Appellant filed motions to stay the divorce decree in both the trial court and this court. While the trial court denied appellant's motion to stay, we granted the motion "to the extent that appellant's obligation to pay the $122,500 cash and property settlement and the

---

4 Appellee informed the court during the April 4, 2022 pre-trial hearing that appellant "took [$]122,500" from the parties' joint account. (Apr. 4, 2022 Hearing Tr. at 26.) In response, appellant agreed "[t]here were amounts that were taken" from the joint account, but he alleged that the "amounts either went to pay * * * [his] son's college education; for housing bills; * * * flights, [or] food." (Apr. 4, 2022 Hearing Tr. at 35.) Appellee's counsel and the court both informed the parties that the April 4, 2022 pre-trial hearing "[was] not an evidentiary hearing." (Apr. 4, 2022 Hearing Tr. at 27.)

$10,000 award of attorney fees [was] stayed during the pendency of this appeal." (Oct. 19, 2023 Journal Entry in case No. 23AP-554.)

{¶ 25} On October 17, 2023, appellant filed a Civ.R. 59(A) motion for new trial. The trial court issued a decision and entry denying the motion for new trial on January 17, 2024. Appellant filed a notice of appeal from the court's entry denying his motion for new trial on January 29, 2024, and we docketed the appeal as case No. 24AP-72.

## II. Assignments of Error

{¶ 26} Appellant appeals, assigning the following errors for our review in case No. 23AP-554:

> [I.] The Trial Court committed error prejudicial to Appellant under the facts by conducting, divested of jurisdiction, proceedings in the Trial Court Case namely a first day of trial evidentiary hearing on 07-17-2023 (see: Transcript) and an *ex parte* second day of trial evidentiary hearing proceeding on 07-18-2023 (see: Transcript). These proceedings promulgated the *09-19-2023 Judgment Entry* (see: Record. "Attachment 1") in error because the Trial Court was divested of jurisdiction on 07-17-2023 when Appellant's filed his Notice of Appeal. The divesture of jurisdiction of the Trial Court continued through this Appeals Court's *Journal Entry* filed 09-06-2023 and the forty five day time for appeal to a superior court under S.Ct.Prac.R.7.01(A)(5)(b). The Trial Court committed error prejudicial to Appellant under the facts and abused its discretion basing the *09-19-2023 Judgment Entry* in whole or part on the proceedings on 07-17-2023 and the *ex parte* proceedings on 07-18-2023 without jurisdiction to conduct these proceedings.
>
> [II.] The Trial Court committed error prejudicial to Appellant under the facts by permitting T. Ryan to prosecute in the *ex parte* evidentiary hearing held on 07-18-2023 in the Trial Court Case (in Appellant's absence due to the Trial Court's abuse of discretion, Appellant's Assignment of Error #3 is incorporated herein) T. Ryan's *Counter Claim* filed on 02-07-2022 against Appellant by failing to transfer to U.S. federal court the *Counter Claim* of T. Ryan, an alien and not a citizen of the United States of America against Appellant, a citizen of the United States of America; as Appellant effectively raised the issue of T. Ryan's citizenship status invoking the jurisdiction of the U.S. federal court, and the Trial Court was divested of jurisdiction *after* the Trial Court terminated the marriage on 07-17-2023.

[III.] The Trial Court committed error prejudicial to Appellant and abused its discretion under the facts by (i) changing on 07-18-2023 the re-scheduled 11:00A.M. hearing time for contested divorce on 07-18-2023 in courtroom #68 from the 11:00A.M. time on 07-18-2023, continuing *sua sponte*, to an entirely new time 12:15P.M., a lunch time, that was not the re-scheduled 11:00A.M. time nor the 1:30P.M. originally scheduled time for which notice to the parties appears on the docket of the Trial Court Case; and (ii) failing to provide notice to Appellant pursuant to Ohio Civ.R. 75(L) or informing the Clerk of Courts, Domestic Relations Division, Court of Common Pleas, Franklin County, Ohio, Division of Domestic Relations and Juvenile Branch (hereafter "Trial Court Clerk") of said change of scheduling and new 12:15P.M. time; and (iii) actually locking the doors to courtroom #68 on 07-18-2023 at the time Appellant arrived early prior to 11:00AM (**as specifically described further below**) as required by the Trial Court on 07-18-2023; (iv) not contacting Appellant by any means to notify Appellant of the Trial Court's change of schedule on 07-18-2023 and its continuing *sua sponte* to the said new 12:15P.M. time before conducting an *ex parte* evidentiary hearing on 07-18-2023; and (v) communicating (*ex parte*) to opposing party T. Ryan and her counselors notice of the change of schedule and the continuing *sua sponte* to the said new 12:15P.M. time not providing any notice to Appellant thereby treating Appellant, a *pro se* citizen litigant differently than T. Ryan and her co counselors; and (vi) failing to abide by the Trial Court's own rulings and orders set forth in the *Continuance* filed 03-09-2023; and (vii) failing to comply with Franklin County Local Rule 4(H); and (viii) failing to abide by its own "Case Management Order" filed on 03-09-2023 ("Trial Court's CMO").

[IV.] Appellant hereby treats for efficiency as a single assignment of error #4, the multiple assignments of error in connection with T. Ryan's witnesses and the Trial Court's admitting into evidence in the 07-18-2023 in the *ex parte* evidentiary hearing: the testimony of T. Ryan's witness Mr. James Hurley ("Mr. Hurley") and the testimony of T. Ryan's undisclosed witness Ms. Vivian née Patrick Ryan ("Ms. Patrick"). The Trial Court committed error prejudicial to Appellant and abused its discretion under the facts by the Trial Court allowing the testimony of Mr. Hurley and the remote testimony of Ms. Patrick and admitting any testimony of Mr. Hurley and Ms. Patrick into evidence on 07-18-2023 in the *ex parte* evidentiary hearing.

[V.] The Trial Court committed error prejudicial to Appellant and abused its discretion under the facts by the Trial Court absent any sound reason disregarding the manifest weight of and Appellant's competent, credible evidence where the Trial Court's wrongful factual conclusions including contained in the *09-19-2023 Judgment Entry* in "Relevant Procedural History and Background", findings in "Finding of Facts""Motions", findings in "Attorney Fees" and "Final Orders" *are not supported by competent, credible evidence.*

[VI.] The Trial Court committed error prejudicial to Appellant and abused its discretion under the facts by not conducting on 07-19-2023 the "third day" of trial, an evidentiary hearing, scheduled for 07-19-2023 at 1:30P.M ordered by the Trial Court's CMO and by striking the hearing dated 07-19-2023 at 1:30P.M hearing for which the Trial Court's "*Notice to Strike*" was not filed with the Clerk until 07-21-2023 two days after the 07-19-2023 hearing was to be held. Bailiff Sheppard signed the Notice to Strike hand dating it 07-19-23 and it is typewritten [wrongly] CASE HAS BEEN CONCLUDED".

[VII.] The Trial Court committed error prejudicial to Appellant and abused its discretion under the facts by making Final Orders in the *09-19-2023 Judgment Entry* in Section V "Final Orders" that are not supported by competent, credible evidence, and are clearly against the manifest weight of the evidence or are contradicted by facts in the Trial Court Case. Appellant incorporates herein assignments of errors #2, #3, #4, #5, #6, #7. The *09-19-2023 Judgment Entry* of the Trial Court as to all Section 'V' Final Orders are not sustained by sufficient evidence and is/are against the manifest weight of Appellant's competent, credible evidence and its manifest weight.

[VIII.] The Trial Court committed error prejudicial to Appellant and abused its discretion under the facts by making Final Orders in the *09-19-2023 Judgment Entry* in Section V "Final Orders" that are not supported by competent, credible evidence, and are clearly against the manifest weight of the evidence or are contradicted by facts in the Trial Court Case. Appellant incorporates herein assignments of errors #2, #3, #4, #5, #6, #7. The *09-19-2023 Judgment Entry* of the Trial Court as to all Section 'V' Final Orders are not sustained by sufficient evidence and is/are against the manifest weight of Appellant's competent, credible evidence and its manifest weight.

[IX.] The Trial Court committed error prejudicial to Appellant and abused its discretion under the facts by the Trial Court's adoption on 04-26-2023 of the February 10, 2023 Order of Magistrate Eric M. Wahl filed on 02-10-2023 as to The Huntington National Bank not a party in the Trial Court Case in light of the competent, credible evidence of T. Ryan's Rule Property Affidavit filed 02-07-2022 in which T. Ryan identified Huntington as holding marital monies in the joint checking account in the name of Appellant and T. Ryan ending 4726.

(Sic passim.)

{¶ 27} Appellant appeals, assigning the following errors for our review in case No. 24AP-72:

[I.] Appellant hereby treats for efficiency as a single assignment of error #1 the multiple assignments of error in connection with the events of the 07-18-2023 *ex parte* proceeding, a purported "second day" of trial that was an evidentiary hearing held in Appellant's absence through no fault or lack of diligence of Appellant. The Trial Court committed error prejudicial to Appellant and abused its discretion under the facts in the Trial Court's *01-17-2024 Judgment Entry* (Attachment 1) by overruling Appellant's *Motion for New Trial Under Rule 59(A) of the Ohio Rules of Civil Procedure* filed 10-17-2023 (Attachment 2); and the Trial Court's *01-17-2024 Judgment Entry* is arbitrary, unreasonable, or unconscionable for the reason the Trial Court: (i) changed on 07-18-2023 the re-scheduled 11:00A.M. hearing time for contested divorce on 07-18-2023 in courtroom #68 from the 11:00A.M. time on 07-18-2023, continuing *sua sponte*, to an entirely new time 12:15P.M., a lunch time, that was not the re-scheduled 11:00A.M. time nor the 1:30P.M. originally scheduled time for which notice to the parties appears on the docket of the Trial Court Case; and (ii) the Trial Court failed to provide notice to Appellant pursuant to Ohio Civ.R. 75(L) and failed to inform the Clerk of Courts, Domestic Relations Division, Court of Common Pleas, Franklin County, Ohio, Division of Domestic Relations and Juvenile Branch (hereafter "Trial Court Clerk") of said change of scheduling and new 12:15P.M. time; and (iii) maintained locked doors to courtroom #68 on 07-18-2023 **at the time Appellant arrived early prior to 11:00AM** as required by the Trial Court on 07-18-2023 until Appellant's time keeping of after 11:00AM time on 07-18-2023 **during the specific periods Appellant stood outside the courtroom #68 doors**; (iv) did not contact Appellant by any

means to notify Appellant of the Trial Court's change of schedule on 07-18-2023 and its continuing *sua sponte* to the said new 12:15P.M. time before conducting an *ex parte* evidentiary hearing on 07-18-2023; and (v) communicating (*ex parte*), according to statement by Bailiff Mr. Corey Sheppard, to opposing party Appellee Tara Hurley f.k.a. Tara Ryan ("T. Ryan") and her counselors notice of the change of schedule and the continuing *sua sponte* to the said new 12:15P.M. time and not providing any equal notice to Appellant treating Appellant, a *pro se* citizen-litigant differently than T. Ryan and her co counselors; and (vi) failing to abide by the Trial Court's own rulings and orders set forth in the *Continuance* filed 03-09-2023 (Attachment 3); and (vii) failing to comply with Franklin County Local Rule 4(H); and (viii) failing to abide by the Trial Court's own "Case Management Order" filed on 03-09-2023 ("Trial Court's CMO") (Attachment 4).

[II.] The Trial Court committed error prejudicial to Appellant and abused its discretion under the facts by overruling in the Trial Court's *01-17-2024 Judgment Entry* Appellant's *Motion for New Trial Under Rule 59(A) of the Ohio Rules of Civil Procedure* filed 10-17-2023; and the Trial Court's *01-17-2024 Judgment Entry* was arbitrary, unreasonable, or unconscionable by the Trial Court not conducting on 07-19-2023 the "third day" of trial, an evidentiary hearing, scheduled for 07-19-2023 at 1:30P.M ordered by the Trial Court's CMO and by striking the hearing dated 07-09-2023 at 1:30P.M intentionally preventing Appellant from being able to present his case as scheduled on 07-19-2023 at 1:30P.M. and the Trial Court intentionally foreclosing any defense by Appellant against the Counter Claim of T. Ryan on 07-19-2023 at 1:30P.M.

[III.] The Trial Court committed error prejudicial to Appellant and abused its discretion under the facts by overruling in the Trial Court's *01-17-2024 Judgment Entry* Appellant's *Motion for New Trial Under Rule 59(A) of the Ohio Rules of Civil Procedure* filed 10-17-2023; and the Trial Court's *01-17-2024 Judgment Entry* was arbitrary, unreasonable, or unconscionable by the Trial Court denying Appellant's rights under the "due course of law" and the open court provision of Article I, Section 16 of the Ohio Constitution requiring notice, a fair opportunity to be heard, and the right to produce testimony, including the right to cross-examine witnesses, and the equal protection guarantee of Section 2 of Article I of the Ohio Constitution and the equal protection or due process clauses of the Fourteenth Amendment to the United States

Constitution; and the Trial Court grossly abused its discretion abridging the substantive and substantial rights of Appellant in the Trial Court Case, a divorce action, a special statutory proceeding in this state.

[IV.] Appellant hereby treats for efficiency as a single assignment of error #4 the multiple assignments of error as to the Trial Court committing error prejudicial to Appellant and abusing its discretion by overruling in the Trial Court's *01-17-2024 Judgment Entry* Appellant's *Motion for New Trial Under Rule 59(A) of the Ohio Rules of Civil Procedure* filed 10-17-2023; and the Trial Court's *01-17-2024 Judgment Entry* was arbitrary, unreasonable, or unconscionable by the Trial Court alleging facts in its *09-19-2023 Judgment Entry* in Section II, "Finding Of Facts" (that the Trial Court incorporated by reference in its *01-17-2024 Judgment Entry*) that are not supported by competent, credible evidence, or are against the manifest weight of the evidence or are contradicted by other facts in the Trial Court Case that Appellant has provided in his Trial Notebooks and supporting evidence as necessary facts and determinations as to credibility and disputed facts, so that this reviewing court can conclude that findings in the Trial Court's Section II, "Finding Of Facts" in the *09-19-2023 Judgment Entry* (as incorporated by reference in the Trial Court's *01-17-2024 Judgment Entry*) are not supported by competent, credible evidence or are against the manifest weight of the evidence or are contradicted by other facts; and that the Trial Court abused its discretion finding said facts and denying Appellant a fair opportunity to contest, to object, to be heard, and the right to produce testimony, including the right to cross-examine witnesses in an evidentiary hearing by reason of the Trial Court holding the *ex parte* trial evidentiary hearing on 07-18-2023 in Appellant's absence and the Trial Court not holding the scheduled 07-19-2023 trial evidentiary hearing.

[V.] The Trial Court committed error prejudicial to Appellant and abused its discretion under the facts by overruling in the Trial Court's *01-17-2024 Judgment Entry* Appellant's *Motion for New Trial Under Rule 59(A) of the Ohio Rules of Civil Procedure* filed 10-17-2023; and the Trial Court's *01-17-2024 Judgment Entry* was arbitrary, unreasonable, or unconscionable by the Trial Court intentionally unconscionably disregarding the manifest weight of Appellant's voluminous evidence filed in the Trial Court Case favorable to Appellant that the Trial Court simply chose not to admit into evidence by Judge Nobles' biased personal selection of only Appellant's Exhibit #7 admitted by Judge Nobles as

Appellant's evidence in the *ex parte* 07-18-2023 Trial Court trial evidentiary hearing demonstrating an absolutely clear bias and prejudice against Appellant, some apparent personal agenda against Appellant, with the Trial Court promulgating multiple irregularities in the Trial Court Case that depart from the due, orderly, and established mode of proceeding.

[VI.] The Trial Court committed error prejudicial to Appellant and abused its discretion under the facts by overruling in the Trial Court's *01-17-2024 Judgment Entry* Appellant's *Motion for New Trial Under Rule 59(A) of the Ohio Rules of Civil Procedure* filed 10-17-2023; and the Trial Court's *01-17-2024 Judgment Entry* was arbitrary, unreasonable, or unconscionable by the Trial Court also not considering the manifest weight of the competent, credible evidence filed in the Trial Court Case by Appellant in the form of Appellant's detailed, evidence exhibits A, B, C, D, E, F, G, H, I filed with Appellant's [Plaintiff's] *Motion For New Trial Under Rule 59(A) Of The Ohio Rules Of Civil Procedure* (attached hereto for simplicity as Attachment 5) and Appellant's other evidence filed in the Trial Court Case.

[VII.] Appellant hereby treats for efficiency as a single assignment of error #7, the Trial Court committed error prejudicial to Appellant and abused its discretion under the facts by overruling in the Trial Court's *01-17-2024 Judgment Entry* Appellant's *Motion for New Trial Under Rule 59(A) of the Ohio Rules of Civil Procedure* filed 10-17-2023; and the Trial Court's *01-17-2024 Judgment Entry* was arbitrary, unreasonable, or unconscionable by the Trial Court making certain Final Orders in the *09-19-2023 Judgment Entry* in Section V "Final Orders" (incorporated by reference by the Trial Court in its *01-17-2024 Judgment Entry*) that are not supported by competent, credible evidence, or are against the manifest weight of the evidence or are contradicted by facts in the Trial Court Case that Appellant has provided as necessary facts and determinations as to credibility and disputed facts, so that this reviewing court can conclude certain Final Orders in the Trial Court's Section V "Final Orders" of the Trial Court's *09-19-2023 Judgment Entry* are not supported by competent, credible evidence or are against the manifest weight of the evidence or are contradicted by other facts. The Trial Court denied Appellant a fair opportunity to contest, to object, to be heard, and the right to produce testimony, including the right to cross-examine witnesses by the Trial Court holding the *ex parte* trial evidentiary hearing on 07-18-2023 in Appellant's

absence and the Trial Court not holding the scheduled 07-19-
2023 trial evidentiary hearing.

(Sic passim.)

### III.    First Assignment of Error in Case No. 23AP-554 & All Assignments of Error in Case No. 24AP-72: Trial Court Jurisdiction Pending Appeal

{¶ 28} For ease of analysis, we jointly address appellant's first assignment of error in case No. 23AP-554 and all of appellant's assignments of error in case No. 24AP-72. Appellant's assignments of error in case No. 24AP-72 all assert the trial court erred by denying his Civ.R. 59 motion for new trial. Appellant's first assignment of error in case No. 23AP-554 asserts the trial court lacked jurisdiction to proceed with the trial on July 17 and 18, 2023, due to appellant's appeal of the court's entry denying his motion for default judgment against Huntington. Appellant filed his notice of appeal from the entry denying his motion for default judgment at 3:34 p.m. on July 17, 2023.

{¶ 29} " '[O]nce an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment.' " *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty.*, 129 Ohio St.3d 30, 2011-Ohio-626, ¶ 13, quoting *State ex rel. Rock v. School Emps. Retirement Bd.*, 96 Ohio St.3d 206, 2002-Ohio-3957, ¶ 8. *Accord In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, ¶ 9 (stating that "[o]nce a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal"). *See Whipps v. Ryan*, 10th Dist. No. 14AP-67, 2014-Ohio-5302, ¶ 42 (holding that "[b]ecause appellant's motion [in the trial court] in large part related to issues subject to determination by this court [on appeal], the trial court was without jurisdiction to entertain appellant's motion"); *State v. Thompson*, 10th Dist. No. 20AP-352, 2021-Ohio-4491, ¶ 19. " 'When a trial court acts beyond its jurisdiction while an appeal is pending, its order is void.' " *Huntington Natl. Bank v. Bywood, Inc.*, 10th Dist. No. 16AP-358, 2017-Ohio-2829, ¶ 10, quoting *Kitson v. Gordon Food Serv.*, 9th Dist. No. 15CA0078-M, 2016-Ohio-7079, ¶ 6.

{¶ 30} Even when an appeal is pending, however, a trial court "retains all jurisdiction not inconsistent with the court of appeals' jurisdiction to reverse, modify, or affirm the judgment." *Yee v. Erie Cty. Sheriff's Dept.*, 51 Ohio St.3d 43, 44 (1990). Thus, when an appeal is taken, a trial court retains jurisdiction over "collateral issues like

contempt, appointment of a receiver and injunction." *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97 (1978). *See Lambda Research v. Jacobs*, 170 Ohio App.3d 750, 2007-Ohio-309, ¶ 21 (1st Dist.) (explaining the trial court "retains jurisdiction over only those issues not directly related to the subject of the appeal"); *Cook v. Toledo Hosp.*, 169 Ohio App.3d 180, 2006-Ohio-5278, ¶ 39 (6th Dist.); *State v. Phipps*, 10th Dist. No. 15AP-524, 2016-Ohio-663, ¶ 13; *State v. Buttery*, 1st Dist. No. C-170141, 2018-Ohio-2651, syllabus.

**{¶ 31}** Appellant contends his July 17, 2023 appeal divested the trial court of jurisdiction to proceed in the divorce case while the appeal was pending. In his first assignment of error, appellant also states the trial court was divested of jurisdiction through this court's "*Journal Entry* filed 09-06-2023 and the forty five day time for appeal to a superior court under S.Ct.Prac.R. 7.01(A)(5)(b)."

**{¶ 32}** This court docketed appellant's appeal from the entry denying his motion for default judgment as case No. 23AP-429. On August 23, 2023, we dismissed the appeal for lack of a final appealable order. Appellant filed a combined application for reconsideration and en banc consideration on September 1, 2023. On September 6, 2023, we issued a journal entry denying appellant's delayed application for reconsideration and his application for en banc consideration. Accordingly, the appeal in case No. 23AP-429 was not pending when the trial court issued the September 19, 2023 judgment entry and decree of divorce. *See Bywood, Inc.*, 2017-Ohio-2829 at ¶ 10, citing *Horvath v. Packo*, 6th Dist. No. L-11-1318, 2013-Ohio-56, ¶ 45 (noting that, "generally, the timely filing of a notice of appeal precludes a trial court from issuing further *orders* affecting matters at issue in the appeal"). (Emphasis added.)

**{¶ 33}** S.Ct.Prac.R. 7.01(A)(5)(b) provides that, if a timely application for reconsideration is filed, and the appellant seeks to appeal the court of appeals' judgment, "the appellant shall file a notice of appeal within forty-five days of the court of appeals' decision denying the application for reconsideration." Thus, S.Ct.Prac.R. 7.01(A)(5)(b) provides the time within which an appellant must file a notice of appeal following a timely application for reconsideration. Appellant did not file a notice of appeal with the Supreme Court of Ohio from any of our orders in case No. 23AP-429. "An appeal is perfected when a written notice of appeal is filed." R.C. 2505.04. Thus, because an appeal is perfected only

upon the timely filing of a notice of appeal, and because a trial court is only divested of jurisdiction " 'once an appeal is perfected,' " we find no support for appellant's contention that the 45-day time limit in S.Ct.Prac.R. 7.01(A)(5)(b) could, on its own, deprive a trial court of jurisdiction. *Electronic Classroom of Tomorrow* at ¶ 13, quoting *Rock* at ¶ 8. *See In re Estate of Robison*, 10th Dist. No. 17AP-232, 2017-Ohio-8980, ¶ 15, citing *Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320 (1995), syllabus (noting "the timely filing of a notice of appeal is the only jurisdictional requirement for perfecting a valid appeal"); *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 8.

{¶ 34} Appellant argues the pending appeal in case No. 23AP-429 deprived the trial court of jurisdiction to conduct the trial on July 17 and 18, 2023 "that promulgated its *09-19-2023 Judgment Entry*." (Emphasis sic.) (Appellant's Amended Brief at 18.) Thus, appellant appears to contend the trial court lacked the authority to conduct the July 2023 trial while the appeal was pending. *See Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 11, quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) (stating that " 'jurisdiction' means 'the courts' statutory or constitutional power to adjudicate the case' " and the term "encompasses jurisdiction over the subject matter and over the person"); *State v. Rue*, 164 Ohio St.3d 270, 2020-Ohio-6706, ¶ 17 (explaining that, because the trial court had jurisdiction over the case, the issue before the court was "not whether the trial court had *jurisdiction* to conduct the[] community-control-revocation proceedings" after the defendant's community control had expired; rather, the issue was whether "the trial court had the *authority* to conduct those proceedings"). (Emphasis added.)

{¶ 35} The trial court retained the authority to conduct the trial in the divorce case despite the pending appeal in case No. 23AP-429. As noted, appellant filed the notice of appeal in case No. 23AP-429 from the court's decision and entry denying his motion for default judgment against Huntington. However, Huntington was not a party to the divorce case.

{¶ 36} Civ.R. 75(B) governs the joinder of parties in divorce proceedings. *Davis v. Hallum-Davis*, 10th Dist. No. 21AP-312, 2022-Ohio-3929, ¶ 16. The rule provides that, while Civ.R. 14, 19, 19.1, and 24 "shall not apply in divorce" actions, a "person or corporation having possession of, control of, or claiming an interest in property, whether real, personal,

or mixed, out of which a party seeks a division of marital property, a distributive award, or an award of spousal support or other support, may be made a party defendant" in a divorce action. Civ.R. 75(B)(1). The term "interest" in Civ.R. 75(B)(1) "means 'lien or ownership, legal or equitable.' " *Moore v. Moore*, 175 Ohio App.3d 1, 2008-Ohio-255, ¶ 17 (6th Dist.), quoting *Shannon v. Shannon*, 8th Dist. No. 61747, 1993 Ohio App. LEXIS 606 (Feb. 4, 1993).

{¶ 37} Appellant never filed a motion to add Huntington as a party defendant pursuant to Civ.R. 75(B)(1). *See Stricker v. Stricker*, 1st Dist. No. C-060435, 2007-Ohio-3309, ¶ 13 (stating that, in any divorce action, "the proper procedure for a nonparty person or corporation to assert an interest in disputed marital assets sought to be divided is through a Civ.R. 75(B)(1) joinder motion"). However, appellant did file a Civ.R. 15 motion for leave to amend his complaint "to add" Huntington as a defendant. (Mot. for Leave to Amend Compl. at 2.)

{¶ 38} The trial court denied appellant's motion for leave to amend his complaint on July 17, 2023. The court noted that, while Civ.R. 75(B) permits joinder of parties to a divorce action under certain circumstances, appellant "failed to provide credible evidence" that Huntington was "actually in possession of, control of, or claim[ed] an interest in any marital property." (Decision & Entry at 2.) Rather, the court noted that appellant's allegations against Huntington "all focused on property that was transferred out of The Huntington National Bank's control." (Decision & Entry at 2.) Because there was nothing in the record indicating appellant could satisfy the Civ.R. 75(B)(1) requirements to join Huntington as a party, the court concluded that amending the complaint to include Huntington "would be futile." (Decision & Entry at 3.) The court noted that appellant was "free to pursue whatever claims he believes he has in the Court that properly has jurisdiction over such claims." (Decision & Entry at 3.) *See Lisboa v. Kraner*, 167 Ohio App.3d 359, 2006-Ohio-3024, ¶ 6 (8th Dist.), citing *Tanagho v. Tanagho*, 10th Dist. No. 92AP-1190, 1993 Ohio App. LEXIS 1201 (Feb. 23, 1993) (noting that R.C. 3105.011 limits the "jurisdiction of the domestic relations division to the determination of domestic relations matters" and "[a]ny collateral claims must be brought in a separate action in the appropriate court or division when the claim involves the determination of the rights of a third-party"); *Howard v. Pharis-Rine*, 5th Dist. No. 08 CA 00114, 2009-Ohio-3981, ¶ 15.

{¶ 39} Throughout the divorce case, appellant asserted Huntington mishandled the funds in the parties' joint account by allegedly issuing a cashier's check in the amount of $775.68 to appellant, sending the check to appellant at the address of appellee's attorney's firm, and by closing the parties' joint checking account. Appellant did not allege that Huntington had possession of, control of, or claimed an interest in the $775.68. As such, the trial court did not abuse its discretion by denying appellant's motion for leave to amend his complaint to add Huntington as a defendant. *See Darby v. A-Best Prods. Co.*, 102 Ohio St.3d 410, 2004-Ohio-3720, ¶ 12 (stating that "review of a trial court decision on a motion seeking leave to add new parties, whether filed pursuant to Civ.R. 15 or 21, is subject to an abuse-of-discretion standard of review"); *Davis* at ¶ 14 (stating that an appellate court applies an abuse of discretion standard when reviewing a court's decision under Civ.R. 75(B)).

{¶ 40} Accordingly, because Huntington was not a party to the divorce case, the court retained the authority to conduct the trial in the divorce case while the appeal in case No. 23AP-429 remained pending. As such, we overrule appellant's first assignment of error in case No. 23AP-554.

{¶ 41} However, we sua sponte find the trial court lacked jurisdiction to rule on appellant's Civ.R. 59 motion for new trial. "Because a court is powerless to hear a case without subject-matter jurisdiction, a court may sua sponte raise the issue of subject-matter jurisdiction and may dismiss the case if it finds that it lacks subject-matter jurisdiction over it." *Pointer v. Smith*, 10th Dist. No. 20AP-555, 2021-Ohio-2247, ¶ 8, citing *Cardi v. State*, 10th Dist. No. 12AP-15, 2012-Ohio-6157, ¶ 8. An appellate court has a duty to sua sponte examine any deficiencies in its jurisdiction. *Jones v. Carpenter*, 10th Dist. No. 16AP-126, 2017-Ohio-440, ¶ 6, citing *Leonard v. Huntington Bancshares, Inc.*, 10th Dist. No. 13AP-843, 2014-Ohio-2421, ¶ 8.

{¶ 42} "A motion for a new trial is inconsistent with a notice of appeal of the judgment sought to be retried." *State v. Kenney*, 8th Dist. No. 81752, 2003-Ohio-2046, ¶ 58. Thus, the filing of a notice of appeal from the final order in a case "divests the trial court of jurisdiction to consider a motion for a new trial." *Id.* *Accord Schausel v. Stevens*, 4th Dist. No. 05CA10, 2006-Ohio-2482, ¶ 6 (noting that "when the notice of appeal precedes the filing of the motion for new trial," the trial court "lacks jurisdiction to proceed"

on the motion for new trial); *State v. Yeager*, 11th Dist. No. 2022-L-048, 2023-Ohio-2730, ¶ 8 (explaining that a trial court lacks jurisdiction to rule on a motion for new trial "after a defendant has filed a notice of appeal from a criminal conviction, [because] the possibility that the defendant's motion might be granted would fundamentally interfere with the appellate court's jurisdiction to reverse, modify, or affirm the appealed conviction"); *State v. LaMar*, 4th Dist. No. 01CA17, 2002-Ohio-6130, ¶ 24; *Majnaric v. Majnaric*, 46 Ohio App.2d 157 (9th Dist.1975), paragraph one of the syllabus. *Compare Amare v. Chellena Food Express*, 10th Dist. No. 07AP-495, 2008-Ohio-65, ¶ 10, citing *Schausel* at ¶ 6.

{¶ 43} Appellant filed his appeal from the trial court's judgment entry and decree of divorce on September 19, 2023. Thereafter, on October 17, 2023, appellant filed his Civ.R. 59 motion for new trial. Accordingly, the trial court lacked jurisdiction to rule on appellant's motion for new trial while the appeal from the divorce decree was pending. Indeed, a decision granting the motion for new trial would have been inconsistent with this court's jurisdiction to reverse, modify, or affirm the divorce decree. Although appellant filed the motion for new trial while his own appeal from the divorce decree was pending, "the invited error doctrine does not apply to matters of subject-matter jurisdiction." *Thompson*, 2021-Ohio-4491, ¶ 20, citing *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, ¶ 27.

{¶ 44} Accordingly, because the trial court did not possess jurisdiction to rule on the motion for new trial, the court's January 17, 2024 decision and entry denying the motion for new trial is void. Therefore, we overrule all of appellant's assignments of error in case No. 24AP-72 and vacate the court's January 17, 2024 entry.

{¶ 45} Based on the foregoing, we overrule appellant's first assignment of error in case No. 23AP-554, overrule all appellant's assignments of error in case No. 24AP-72, and vacate the trial court's January 17, 2024 judgment entry. Our remaining analysis concerns only the assignments of error in case No. 23AP-554.

IV.    **Second Assignment of Error – Appellee's Counterclaim & Transfer to Federal Court**

{¶ 46} In his second assignment of error, appellant asserts the trial court erred by failing to transfer appellee's counterclaim to federal court and by permitting appellee to

proceed on her counterclaim at trial. Appellant also asserts the trial court was divested of jurisdiction after the court terminated the marriage on July 17, 2023.

{¶ 47} In the divorce decree, the court concluded it "has jurisdiction of the parties and the subject matter." (Decree at 3.) R.C. 3105.03 provides that the "plaintiff in actions for divorce and annulment shall have been a resident of the state at least six months immediately before filing the complaint." Appellant alleged in his complaint for divorce that he had been a resident of the state of Ohio for at least 6 months and a resident of Franklin County for at least 90 days prior to filing the complaint. *See* Civ.R. 3(C)(9) (providing that in "actions for divorce" proper venue lies "in the county in which the plaintiff is and has been a resident for at least ninety days immediately preceding the filing of the complaint"). The record demonstrates that appellee voluntarily assented to the trial court's jurisdiction by participating in the case and not raising the defense of personal jurisdiction. *See* Civ.R. 12(B) and (H); *Snyder Computer Sys., Inc. v. Stives*, 175 Ohio App.3d 653, 2008-Ohio-1192, ¶ 15 (7th Dist.); *NetJets, Inc. v. Binning*, 10th Dist. No. 04AP-1257, 2005-Ohio-3934, ¶ 6. Accordingly, the trial court properly determined it had jurisdiction over the subject matter and the parties.

{¶ 48} Appellant contends that, because appellee was a citizen of a foreign country and the amount in controversy in the case exceeded $75,000, the trial court erred by failing to transfer appellee's counterclaim to federal court. *See* 28 U.S.C. 1332(a)(2) (addressing federal diversity jurisdiction and providing, in relevant part, that district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and the matter is between "citizens of a State and citizens or subjects of a foreign state"). However, even in "suits brought pursuant to diversity jurisdiction," the " 'whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.' " *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992), quoting *In re Burrus*, 136 U.S. 586, 593-94 (1890). Commonly known as the "domestic relations exception" to federal subject-matter jurisdiction, the exception "precludes federal courts from hearing cases that 'involv[e] the issuance of a divorce, alimony, or child custody decree.' " *Alexander v. Rosen*, 804 F.3d 1203, 1205 (6th Cir.2015), quoting *Ankenbrandt* at 704. Accordingly, a plaintiff cannot " 'positively sue[] in federal court for divorce.' " *Id.*, quoting *Chevalier v. Estate of Barnhart*, 803 F.3d 789

(6th Cir.2015). *See Ankenbrandt* at 703 (stating the "domestic relations exception * * * divests the federal courts of power to issue divorce, alimony, and child custody decrees").

{¶ 49} Appellee's counterclaim asked the court to grant her "a complete and absolute divorce from the [appellant]." (Counterclaim at 2.) Accordingly, the domestic relations exceptions precluded a federal court from hearing appellee's counterclaim for divorce.

{¶ 50} Appellant further asserts that, due to appellee's foreign citizenship, the trial court "lacked jurisdiction as to [appellee's] *Counter Claim*." (Emphasis sic.) (Appellant's Amended Brief at 24.) Appellant appears to contend the trial court lacked jurisdiction to adjudicate appellee's counterclaim because she did not independently satisfy the residency requirement of R.C. 3105.03. However, the residency requirement in R.C. 3105.03 applies only to the plaintiff filing the action for divorce; the statute does not contain a residency requirement for the defendant. Because appellant satisfied the R.C. 3105.03 residency requirement, the trial court had subject-matter jurisdiction over the case. As such, the court had jurisdiction to proceed on appellee's counterclaim for divorce. *See* R.C. 3105.17(A) (providing that "[e]ither party to the marriage may file a complaint for divorce * * *, and when filed the other may file a counterclaim for divorce"); *Bolinger v. Bolinger*, 49 Ohio St.3d 120, 123 (1990) (stating the "subject-matter jurisdiction of a trial court * * * to formulate an equitable division of the marital assets commences when either party files a complaint for divorce"); *Lincoln v. Lincoln*, 33 Ohio Misc. 213, 214 (Stark Cty C.P.1973) (explaining that the trial court had jurisdiction to resolve the non-resident defendant's counterclaim for divorce, even after the resident-plaintiff dismissed his complaint for divorce, because "residency requirements apply to the initiation of the action, so that even a voluntary dismissal of the principal action will not deprive the court of jurisdiction, once attached, to proceed upon a counterclaim").

{¶ 51} Appellant further alleges the trial court "was divested of jurisdiction *after* the Trial Court terminated the marriage on 07-17-2023." (Emphasis sic.) (Appellant's Amended Brief at 19.) In the divorce decree, the court identified the duration of the marriage as being from September 21, 1992 to July 17, 2023. (Decree at 4.) Thus, appellant appears to contend the trial court lacked jurisdiction to take action in the case after the July 17, 2023 termination of marriage date. However, the court identified July 17, 2023 as

the termination of marriage date for purposes of valuing the marital estate. *See Grody v. Grody*, 10th Dist. No. 07AP-690, 2008-Ohio-4682, ¶ 6 (stating the "valuation of the marital estate for purposes of equitable division and support is the duration of the marriage"); R.C. 3105.171(A)(2) (defining the "duration of the marriage"). The divorce was not effective until the trial court issued the judgment entry and decree of divorce on September 19, 2023. Indeed, the divorce decree specified that the "effective date" of the decree was "the date of filing." (Decree at 18.) "[I]t is axiomatic that a court speaks through its journal entries." *Jackson v. Jackson*, 10th Dist. No. 23AP-325, 2024-Ohio-1755, ¶ 34. Accordingly, we find no support for appellant's contention that the trial court was divested of jurisdiction after July 17, 2023.

{¶ 52}  Based on the foregoing, we overrule appellant's second assignment of error.

## V.     Third & Sixth Assignments of Error – Hearings on July 18, 2023 & July 19, 2023

{¶ 53} In his third assignment of error, appellant asserts the trial court erred by continuing the July 18, 2023 evidentiary hearing from 11:00 a.m. to 12:15 p.m. In his sixth assignment of error, appellant asserts the trial court erred by not conducting the evidentiary hearing scheduled for July 19, 2023. Because these assignments of error are interrelated, we address them jointly.

{¶ 54} Appellant contends the trial court violated his right to due process by continuing the July 18, 2023 hearing from 11:00 a.m. to 12:15 p.m. without notice. The fundamental requirement of due process is " 'notice and hearing, that is, an opportunity to be heard.' " *Howard v. Ohio State Racing Comm.*, 10th Dist. No. 18AP-349, 2019-Ohio-4013, ¶ 39, quoting *Korn v. Ohio State Med. Bd.*, 61 Ohio App.3d 677, 684 (10th Dist.1988). However, "the *opportunity* to be heard * * * is subject to waiver." (Emphasis sic.) *Goldman v. State Med. Bd.*, 10th Dist. No. 98AP-238, 1998 Ohio App. LEXIS 4918, *8 (Oct. 20, 1998), citing *Korn* at 684, and *Boddie v. Connecticut*, 401 U.S. 371, 378-79 (1971).

{¶ 55} Appellant also contends the court violated Civ.R. 75(L), Loc.R. 4(H) of the Court of Common Pleas of Franklin County, Domestic Relations Division, and the court's own March 9, 2023 case management order by continuing the hearing from 11:00 a.m. to 12:15 p.m. without proper notice. *See* Civ.R. 75(L) (providing that "where there is no counsel of record for the adverse party, the court shall give the adverse party notice of the

trial upon the merits"); Loc.R. 4(H) (identifying certain requirements for all motions for continuance filed in the domestic relations court).

{¶ 56} The record demonstrates that, at the conclusion of the July 17, 2023 hearing, all parties agreed to begin the July 18, 2023 hearing at 11:00 a.m. At the start of the July 18, 2023 hearing, the court noted that its bailiff called the case at 12:00 p.m. and appellant was still not present for the hearing at 12:15 p.m. (July 18, 2023 Tr. at 120.) The court noted that appellant "was aware of the 11:00 start date" but had "yet to check in." (July 18, 2023 Tr. at 121.) In the divorce decree, the court explained it had other cases on its July 18, 2023 morning docket that caused it to run behind schedule, something which was "not an uncommon occurrence in many Courts." (Decree at 3.)

{¶ 57} The record does not support appellant's contention that the court formally continued the time of the July 18, 2023 hearing. Instead, the record demonstrates the court was reasonably delayed with other matters on its docket and called the trial scheduled for 11:00 a.m. at 12:00 p.m.—one hour late. Notably, although the hearing on July 17, 2023 (where both parties appeared) was scheduled to begin at 1:30 p.m., the transcript from the hearing demonstrates the "case [was] called at 2:21" p.m. (July 17, 2023 Tr. at 4.) Thus, the court's one-hour delay on July 18, 2023 was both reasonable and predictable, as the court experienced a similar delay just one day earlier. Therefore, we conclude appellant's apparent contention that the July 18, 2023 hearing should have begun promptly at 11:00 a.m. lacks merit. *See Schafer v. McNeill Ents.*, 4th Dist. No. 1071, 1984 Ohio App. LEXIS 12736, *1, 4 (Sept. 26, 1984) (affirming the trial court's decision granting judgment in the plaintiff's favor where, although the defendant arrived at 1:30 p.m. for his 1:30 p.m. trial, the defendant then "left before the trial because he had business commitments at 3:00," and the reviewing court found "no merit to [the defendant's] assumption the trial should have begun and ended before 3:00").

{¶ 58} Moreover, even if the court had commenced the July 18, 2023 hearing promptly at 11:00 a.m., appellant would not have been present for the hearing. Appellant has filed video footage with this court from the courthouse's own July 18, 2023 security cameras. Appellee specifically asks us to review, and not strike, the security camera footage submitted by appellant. Because the video is from the courthouse's own security department, we find it appropriate to take judicial notice of the video footage. *See* Evid.R.

201(B) (stating a judicially noticed fact must be "one not subject to reasonable dispute in that it is * * * capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

{¶ 59} The video demonstrates that appellant exited the courthouse's 6th floor elevators at 10:47 a.m. on July 18, 2023. Appellant then walked down the hallway and stood in front of the door to the relevant courtroom. Appellant approached the courtroom door at 10:49 a.m. but did not enter the courtroom. Other people exited and entered the courtroom at 10:53 a.m. Appellant walked down the hallway away from the courtroom at 10:57 a.m. and, at 10:58 a.m., appellant boarded an elevator and left the 6th floor of the courthouse. Appellee and her attorneys exited the 6th floor elevators at 11:01 a.m., walked down the hallway, and entered the courtroom through the courtroom door. Shortly thereafter, appellee and her attorneys exited the courtroom and walked down the hallway. Several people entered and exited the courtroom from 11:00 a.m. to 12:00 p.m. The court's bailiff exited the courtroom at 11:58 a.m., walked down the hallway, and reappeared with appellee and her attorneys, who then entered the courtroom. From 12:00 p.m. to 1:00 p.m., various people continued to enter and exit the courtroom. Appellee and her attorneys exited the courtroom and boarded the elevators at 1:00 p.m. Appellant exited the 6th floor elevators at 1:21 p.m. and walked down the hallway toward the courtroom. The court's bailiff exited the courtroom at 1:23 p.m., and appellant and the bailiff then entered the courtroom together.

{¶ 60} Thus, the video demonstrates that appellant left the 6th floor of the courthouse at 10:58 a.m., two minutes before the scheduled hearing time. Appellant did not return to the 6th floor until 1:21 p.m., over one hour after the hearing began and nearly two and one-half hours after the scheduled hearing time. Accordingly, even if the July 18, 2023 hearing had begun at 11:00 a.m., appellant would not have been present for the hearing.

{¶ 61} Appellant alleges the trial court "actually lock[ed] the doors to courtroom #68 on 07-18-2023 at the time Appellant arrived early prior to 11:00AM." (Appellant's Amended Brief at 25.) The court specifically noted in the decree that the courtroom door "remained unlocked and open to the public" on July 18, 2023. (Decree at 2.) Regardless, appellant's contention regarding the courtroom doors being locked is irrelevant. Appellant

left the courtroom area before 11:00 a.m. Thus, a locked door did not prevent appellant from attending the 11:00 a.m. hearing. Appellant voluntarily chose to leave the courtroom area prior to 11:00 a.m. and to remain absent for over two hours thereafter. Because appellant had notice of the 11:00 a.m. hearing time and voluntarily left the courtroom area before the scheduled hearing, appellant waived his opportunity to be heard at the July 18, 2023 hearing. *See Black v. State Bd. of Psychology*, 160 Ohio App.3d 91, 2005-Ohio-1449, ¶ 9 (10th Dist.) (stating the "[a]ppellant received an opportunity to participate in the hearing and waived that right and was not denied due process"); *In re J.R.R.*, 12th Dist. No. CA2013-09-176, 2014-Ohio-3550, ¶ 18 (noting that because "the court gave [the party] notice of the hearing and an opportunity to be heard," the party's "personal choice not to attend the hearing [did] not vitiate the due process afforded her"); *Coleman v. R&T Invest. Property*, 10th Dist. No. 13AP-863, 2014-Ohio-2080, ¶ 5, 16.

{¶ **62**} Although appellant repeatedly refers to the July 18, 2023 trial as an "*ex parte* evidentiary hearing," because he had notice of the hearing, the hearing was not ex parte. (Appellant's Amended Brief at 25.) *See Black's Law Dictionary* 697 (10th Ed.2014) (defining "ex parte" as "relating to, or involving court action taken or received by one party without notice to the other"); *State v. Sanders*, 188 Ohio App.3d 452, 2010-Ohio-3433, ¶ 19 (10th Dist.) (noting that an "ex parte communication has been defined by some courts as an act done without notice to an adversely interested party"). *See also Naumoff & Naumoff v. Touby*, 5th Dist. No. 97-CA13-2, 1997 Ohio App. LEXIS 5350, *2 (Oct. 29, 1997) (explaining that, because the appellant had notice of the trial but failed to appear, the trial court "neither proceeded *ex parte* nor granted a default judgment, but rather, conducted a bench trial in which [the] appellee put on evidence directed to each of the elements of its cause of action"). Accordingly, because appellant waived his opportunity to be heard at the July 18, 2023 hearing, the hearing was not ex parte and the court did not deny appellant due process by conducting the trial in his absence.

{¶ **63**} Appellant's sixth assignment of error asserts the trial court erred by striking the evidentiary hearing scheduled for July 19, 2023. The trial court explained that, because the "trial concluded on July 18, 2023, a *Strike Notice* was filed by the Court as a matter of procedure, not substance," striking the July 19, 2023 evidentiary hearing. (Emphasis sic.) (Decree at 17.) The Strike Notice, dated July 18, 2023, states the hearing scheduled for

July 19, 2023 was struck because the "CASE HA[D] BEEN CONCLUDED." (Emphasis sic.) (Notice to Strike.)

{¶ 64} Appellant argues the case "was not 'concluded' by [the bailiff's] signing the Trial Court's '*Notice To Strike*.'" (Emphasis sic.) (Appellant's Amended Brief at 54.) Appellant is correct that the Strike Notice did not resolve the divorce action. The Strike Notice simply struck the July 19, 2023 hearing because the trial had concluded on July 18, 2023. The statement on the Strike Notice indicating the case had been concluded referred to the fact that the trial had concluded, not the case itself.

{¶ 65} "A trial court has the inherent authority to control its docket and manage the cases before it." *Flynn v. Flynn*, 10th Dist. No. 03AP-612, 2004-Ohio-3881, ¶ 10, citing *Mayer v. Bristow*, 91 Ohio St.3d 3, 7 (2000). *Compare Littler v. Janis*, 10th Dist. No. 23AP-360, 2024-Ohio-1145, ¶ 21, quoting *N. Elec., Inc. v. Amsdell Constr., Inc.*, 8th Dist. No. 99775, 2013-Ohio-5433, ¶ 9 (stating that because courts have the " 'power to manage and administer [their] own docket and to ensure the orderly and expeditious disposition of cases,' " the "failure of a party to attend a hearing 'at which the trial court had directed a party to appear may be considered by that court as a failure to prosecute' "). "A trial court's decision in this regard will not be reversed absent an abuse of discretion." *Flynn* at ¶ 10, citing *Woodruff v. Barakat*, 10th Dist. No. 02AP-351, 2002-Ohio-5616. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). *See Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985).

{¶ 66} The trial court had the inherent authority to manage its docket, and the court acted within its discretion to strike the July 19, 2023 hearing after the court had received all evidence from the only party to appear and the trial concluded on July 18, 2023. Appellant fails to demonstrate that the trial court abused its discretion by striking the July 19, 2023 hearing.

{¶ 67} Based on the foregoing, we overrule appellant's third and sixth assignments of error.

**VI. Fourth Assignment of Error – Testimony of Mr. Hurley & Ms. Patrick**

{¶ 68} In his fourth assignment of error, appellant asserts the trial court erred by admitting the testimony of Mr. Hurley and Ms. Patrick at the July 18, 2023 hearing. The

admission or exclusion of evidence is generally within the discretion of the trial court. *Swearingen v. Swearingen*, 10th Dist. No. 06AP-698, 2007-Ohio-1241, ¶ 13. An appellate court will not reverse a trial court's decision to admit or exclude evidence absent an abuse of discretion. *Id.*, citing *State ex rel. Sartini v. Yost*, 96 Ohio St.3d 37, 2002-Ohio-3317, ¶ 21.

{¶ 69} On April 20, 2023, appellee filed a motion asking the court to permit Mr. Hurley to testify remotely because Mr. Hurley was 84 years old, had health issues, and lived in the U.K. The court found that appellee established "good cause" for Mr. Hurley to appear electronically and granted the motion. (Apr. 21, 2023 Jgmt. Entry.) During the July 17, 2023 hearing, appellant objected to Mr. Hurley's remote testimony. Appellant informed the court that Mr. Hurley was "permanently barred from entry into the United States" and a "former convicted felon." (July 17, 2023 Tr. at 68-69.) Appellant also argued there was an "issue" regarding whether an oath could be administered to Mr. Hurley in the U.K. (July 17, 2023 Tr. at 69.) The court informed appellant that it could "have a Zoom hearing with a person from a different country and put that person under oath." (July 17, 2023 Tr. at 70.) The court also noted it granted the motion for Mr. Hurley to appear electronically because Mr. Hurley was "an 80-year-old man and travel [was] difficult," not because Mr. Hurley was "barred from the United States." (July 17, 2023 Tr. at 68.) Mr. Hurley testified via Zoom at the July 18, 2023 hearing.

{¶ 70} Appellant initially asserts the trial court erred by permitting Mr. Hurley's remote testimony because Mr. Hurley was "a convicted felon." (Appellant's Amended Brief at 38.) However, a prior felony conviction does not render a person incompetent to testify. *See* Evid.R. 601(A) (stating that "[e]very person is competent to be a witness except as otherwise provided in these rules"); *State v. Wogenstahl*, 1st Dist. No. C-930222, 1994 Ohio App. LEXIS 5321, *34 (Nov. 30, 1994), quoting *In re Lieberman*, 163 Ohio St. 35, 38 (1955) (noting that the " 'testimony of witnesses either convicted or charged with felony is competent' ").

{¶ 71} Appellant further asserts the trial court could not " 'bring' Mr. Hurley electronically 'into' the U.S." because Mr. Hurley was "barred from entering the United States of America." (Appellant's Amended Brief at 38-39.) Appellant also states the court could not administer the oath to Mr. Hurley when Mr. Hurley was not "physically present

'within' the U.S." (Appellant's Amended Brief at 39.) "R.C. 2315.01(A), Evid.R. 603, R.C. 2317.30, and Article I, Section 7 of the Ohio Constitution all require that an oath be administered to a witness before the witness may testify." *Scott v. Wells*, 1st Dist. No. C-210268, 2022-Ohio-471, ¶ 13. Civ.R. 43(A) provides that, while a witness's testimony must generally "be taken in open court," for "good cause and with appropriate safeguards, the court may permit testimony in open court by remote presence." The rule further provides that "[e]very witness testifying remotely, including those outside this state, in a trial or other proceeding in open court in Ohio must affirm on the record that the witness has submitted to the jurisdiction of the Ohio court for the purpose of enforcement of his or her oath or affirmation." Civ.R. 43(D)(2).

{¶ 72} The court found good cause for Mr. Hurley's remote appearance because Mr. Hurley's age and health issues made travel to the United States difficult. *See United States v. Benson*, 79 Fed. Appx. 813, 821 (6th Cir.2003) (upholding the trial court's decision to allow an 85-year-old witness to testify via video conference from California because the elderly witness was too ill to travel). The transcript from the July 18, 2023 hearing demonstrates that the court told Mr. Hurley to "raise [his] right hand" so the court could "swear [him] in." (July 18, 2023 Tr. at 141.) The transcript further states "[w]itness sworn." (July 18, 2023 Tr. at 141.) Accordingly, the record demonstrates the trial court complied with Civ.R. 43 in the present case.

{¶ 73} Appellant also claims he was "denied opportunity to confront or to cross examine Mr. Hurley" under the "Confrontation Clause." (Appellant's Amended Brief at 40.) However, the Confrontation Clause of the Sixth Amendment is not applicable in civil cases. *Masterson v. Brody*, 8th Dist. No. 111043, 2022-Ohio-3429, ¶ 64. *Accord State Auto Mut. Ins. Co. v. Lytle*, 10th Dist. No. 84AP-424, 1985 Ohio App. LEXIS 5902 (Mar. 5, 1985) (stating that "[b]ecause this is a civil case, the Confrontation Clause has no application"). Moreover, appellant had an opportunity to cross-examine Mr. Hurley at the July 18, 2023 hearing, but appellant chose not to attend the hearing. The trial court did not abuse its discretion by admitting Mr. Hurley's testimony.

{¶ 74} Appellant also asserts the trial court erred by "allowing the remote hearsay testimony of * * * Ms. Patrick" at the July 18, 2023 hearing. (Appellant's Amended Brief at 42.) However, the record demonstrates that Ms. Patrick testified in person at the July 18,

2023 hearing. Appellant further states that Ms. Patrick's testimony violated the court's case management order because appellee did not disclose Ms. Patrick as a witness prior to trial. The case management order instructed the parties to provide their list of all potential witnesses to the other party at least 30 days before trial. Loc.R. 4(E) of the domestic relations court provides that any witness not disclosed by the date designated in the case schedule "may not be called to testify at trial," unless "the Trial Judge orders otherwise for good cause and subject to such conditions as justice requires." *Compare Foster v. Sullivan*, 10th Dist. No. 13AP-876, 2014-Ohio-2909, ¶ 21 ("recogniz[ing] that Loc.R. 43 [of the Court of Common Pleas of Franklin County, General Division] allows for overlooking a failure to properly disclose a witness when good cause exists and justice so demands").

{¶ 75} Because appellant was not present at the July 18, 2023 hearing, he did not object to Ms. Patrick's testimony. As such, we review the admission of Ms. Patrick's testimony for plain error. *In re C.C.*, 10th Dist. No. 04AP-883, 2005-Ohio-5163, ¶ 27, citing Evid.R. 103(A)(1). In civil cases, "the plain error doctrine is not favored" and should be applied only in the "extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-23 (1997). The civil plain error doctrine "implicates errors in the judicial process where the error is clearly apparent on the face of the record and is prejudicial to the appellant." *Brooks-Lee v. Lee*, 10th Dist. No. 11AP-284, 2012-Ohio-373, ¶ 26, citing *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223 (1985). *See Barnett v. Thornton*, 10th Dist. No. 01AP-951, 2002-Ohio-3332, ¶ 14 (stating that to "prevail under a plain error standard, the appellant must demonstrate that but for the error, the outcome of the trial would have been otherwise").

{¶ 76} In his brief, appellant does not argue the admission of Ms. Patrick's testimony amounted to plain error. "It is not within our role as an appellate court to construct a legal argument for [a party] as to why th[e] case satisfies the civil plain error standard." *Khasawneh v. Aldamen*, 10th Dist. No. 23AP-276, 2024-Ohio-937, ¶ 10. *See also Stevens v. Stevens*, 9th Dist. No. 17CA0084-M, 2019-Ohio-264, ¶ 17. Nevertheless, we note that Ms. Patrick's testimony consisted only of stating that appellee was her mother-in-law, she

knew both appellant and appellee, and she knew appellee to be truthful but did not know appellant to be truthful. (July 18, 2023 Tr. at 149-50.) Reviewing the entire record, we do not find the outcome of the trial would have differed in the absence of Ms. Patrick's testimony. As such, the admission of Ms. Patrick's testimony did not amount to plain error.

{¶ 77} Based on the foregoing, we overrule appellant's fourth assignment of error.

## VII. Fifth & Eighth Assignments of Error – Property Determinations

{¶ 78} In his fifth and eighth assignments of error, appellant asserts the trial court's orders concerning the parties' property were against the manifest weight of the evidence. In divorce proceedings, the trial court is required to determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Marital property does not include separate property, R.C. 3105.171(A)(3)(b), and separate property is statutorily defined in R.C. 3105.171(A)(6)(a).

{¶ 79} The spouse seeking to have property declared separate must establish that one of the R.C. 3105.171(A)(6)(a) "separate property" definitions applies to the asset. *Hetzner v. Hetzner*, 10th Dist. No. 23AP-176, 2023-Ohio-3951, ¶ 13. The commingling of separate and marital property "does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "[T]he holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." R.C. 3105.171(H). After determining what constitutes marital property and what constitutes separate property, the court is required to divide the marital and separate property equitably between the spouses. R.C. 3105.171(B). Generally, separate property is to be distributed to its individual owner pursuant to R.C. 3105.171(D).

{¶ 80} When the parties contest whether an asset is marital or separate property, it is presumed to be marital unless proven otherwise. *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 10AP-1161, 2011-Ohio-6819, ¶ 11. The party seeking to have property declared separate has the burden of proof, by a preponderance of the evidence, to prove the property is separate. *Beagle v. Beagle*, 10th Dist. No. 07AP-494, 2008-Ohio-764, ¶ 23. A party requesting that an asset be classified as separate property "bears the burden of tracing [it] to his or her separate property." *Wolf-Sabatino* at ¶ 11. Thus, "[t]raceability is 'the focus when determining whether separate property has lost its separate character after being

commingled with marital property.' " *Id.*, quoting *Peck v. Peck*, 96 Ohio App.3d 731, 734 (12th Dist.1994).

{¶ 81} The characterization of property as marital or separate is a factual inquiry. *Taub v. Taub*, 10th Dist. No. 08AP-750, 2009-Ohio-2762, ¶ 15. As such, we review a trial court's classification of property as marital or separate under a manifest weight of the evidence standard and will affirm a trial court's determination if some competent, credible evidence supports the classification. *Roush v. Roush*, 10th Dist. No. 15AP-1071, 2017-Ohio-840, ¶ 18, citing *Banchefsky v. Banchefsky*, 10th Dist. No. 09AP-1011, 2010-Ohio-4267, ¶ 36. *See Montgomery v. Montgomery*, 4th Dist. No. 02CA687, 2003-Ohio-4558, ¶ 16. An appellate court's job is not to reweigh the evidence, but to determine whether competent, credible evidence in the record supports the trial court's findings. *Wolf-Sabatino* at ¶ 12.

{¶ 82} The trial court initially noted the parties purchased the Roxbury property in 1996 for $310,000 and found "no evidence was presented regarding the source of the down payment for this property." (Decree at 4.) Because the property was "purchased during the parties' marriage," the court concluded that the Roxbury property was "a marital asset and any debt associated with the real estate was a marital debt" at the time of purchase. (Decree at 4.)

{¶ 83} Appellant contends the trial court erred by finding "**no evidence**" regarding the source of the down payment for the Roxbury property. (Emphasis sic.) (Appellant's Amended Brief at 46.) Appellant notes he filed an affidavit with the trial court on July 18, 2023 addressing the source of the funds used for the down payment. The record demonstrates appellant filed three affidavits with the trial court at 10:10 a.m., 10:11 a.m., and 10:12 a.m. on July 18, 2023. There is nothing in the record indicating the court considered appellant's July 18, 2023 affidavits before issuing the September 19, 2023 divorce decree.

{¶ 84} Generally, affidavits are not admissible at trial because they constitute hearsay. *Ford Motor Credit Co. v. Ryan & Ryan, Inc.*, 10th Dist. No. 17AP-304, 2018-Ohio-3960, ¶ 30, citing *C.C.*, 2005-Ohio-5163, ¶ 76. *Accord Haupt v. Haupt*, 11th Dist. No. 2015-G-0049, 2017-Ohio-2719, ¶ 39 (stating that "an affidavit cannot be used as a substitute for direct testimony because it constitutes hearsay"); *Poller v. Columbia Broadcasting Sys. Inc.*, 368 U.S. 464, 473 (1962) (explaining that "[t]rial by affidavit is no substitute for trial

by jury," because "[i]t is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised"). In *Tyra v. Tyra*, 1st Dist. No. C-140211, 2014-Ohio-5732, the court found a party's use of an affidavit as a replacement for direct testimony amounted to plain error. The court determined that the affidavit "patently violated the hearsay rule," "abdicated [the court's] function of ensuring that only competent evidence be admitted," and violated the opposing party's "right to meaningful cross-examination." *Id*. at ¶ 11-12. Accordingly, the trial court properly refused to consider appellant's July 18, 2023 affidavits because they were inadmissible hearsay.

{¶ 85} Because the parties acquired the Roxbury property during the marriage, we find no error in the court's conclusion that the property was a marital asset with associated marital debt at the time of purchase. *See Scinto v. Scinto*, 10th Dist. No. 09AP-5, 2010-Ohio-1377, ¶ 16, citing *O'Grady v. O'Grady*, 11th Dist. No. 2003-T-0001, 2004-Ohio-3504 (noting that "[a] presumption exists that any property acquired during the marriage is marital unless there is evidence offered to rebut that presumption"); R.C. 3105.171(A)(3)(a)(i) (stating that "marital property" includes "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage").

{¶ 86} Appellant further asserts the trial court erred by finding the entire $666,607.46 of sale proceeds from the Roxbury property to be appellee's separate property. For the reasons that follow, we agree.

{¶ 87} Initially, however, we agree with the court's conclusion that the money appellee received from her father in 2012 was her separate property. Separate property includes "[a]ny gift of any real or personal property * * * that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii). Thus, when a gift is made during the marriage, the spouse alleging the gift to be their separate property "bears the burden of establishing, by clear and convincing evidence, that the gift was given only to that spouse." *Varholick v. Varholick*, 11th Dist. No. 2005-G-2611, 2006-Ohio-1011, ¶ 21.

{¶ 88} Appellee testified her father "gave [her] a gift" in 2012 that was "specifically for the children's sake and [her] sake." (July 18, 2023 Tr. at 128.) Appellee presented a

May 24, 2012 email between herself and appellant, where she informed appellant that she would see her "dad tomorrow," he would "like to give [her] the money to buy the house," and that "obviously, [the house] would end up in [her] name." (Trial Ex. D.) Appellee also presented a letter from her father, dated June 21, 2012, stating that he was transferring $764,950 to his daughter "as a gift to her" and that he did "not expect the return of these monies given by [him] as a gift to [his] daughter." (Trial Ex. B.) Mr. Hurley testified at trial and affirmed that he gifted the $764,950 "solely to [appellee]." (July 18, 2023 Tr. at 145.) Accordingly, competent, credible evidence in the record supported the court's conclusion that the $764,950 gift was appellee's separate property. *See Spinetti v. Spinetti*, 9th Dist. No. 20113, 2001 Ohio App. LEXIS 1134, *13 (Mar. 14, 2001) (finding competent, credible evidence supporting the conclusion that "the $ 60,000 was an individual gift to [the] Appellee" because appellee and his mother "testified that while the money was deposited into a joint account, it was intended to be a gift to [the] Appellee").

{¶ 89} Appellee explained that, after the parties purchased the Roxbury property in 1996, they refinanced the property several times. Appellee further explained that, in 2012, the property went into foreclosure when the parties owed $643,500 on the mortgage. Appellee affirmed that she used part of the gift from her father to "pay off the marital home and get [her] out of foreclosure." (July 18, 2023 Tr. at 129.) Appellee identified the release of mortgage she received after she "paid it off"; the release of mortgage is dated March 28, 2013 and states that EMC Mortgage Corporation "hereby releases a Mortgage from James M. Ryan, Tara Ryan, husband and wife, * * * in the amount of $643,500." (July 18, 2023 Tr. at 129; Trial Ex. E.)

{¶ 90} Appellee explained that, between the time she received her gift until she paid off the mortgage, she and appellant "were in negotiation" with their mortgage lender "to lower the amount from [$]643[,500]." (July 18, 2023 Tr. at 130.) Indeed, in the May 24, 2012 email, appellee told appellant that once she received the money from her father appellant could "negotiate with the knowledge that the money will be there to deliver." (Trial Ex. D.) Appellee testified that as a result of their negotiations, she "paid [$]515,000" to release the mortgage. (July 18, 2023 Tr. at 130.)

{¶ 91} Appellee further explained that the parties did not incur any new debt on the Roxbury property after March 2013, and that they received $666,607.46 in proceeds when

they sold the property in October 2016.  (July 18, 2023 Tr. at 131; Trial Ex. H.)  The trial court concluded that, because appellee used the money "she received * * * [as a] gift from her father" to pay "off the mortgage balance owed on [the Roxbury property]" appellee's "payment created a separate property interest for [her]" in the property.  (Decree at 5.)  The trial court further found that the entire $666,607.46 of sale proceeds from the Roxbury property "was [appellee's] separate property by virtue of the gift from her father being used to pay off the debt on the real estate."  (Decree at 5.)

{¶ 92}  As noted, however, the Roxbury property was a marital asset with associated marital debt at the time of purchase.  Accordingly, from 1996 to 2012, the property continued to be a marital asset with marital debt.  *See Ray v. Ray*, 9th Dist. No. 03CA0026-M, 2003-Ohio-6323, ¶ 8, quoting *Charles v. Charles*, 9th Dist. No. 96CA006396, 1997 Ohio App. LEXIS 191  (Jan. 22, 1997) (noting that " '[a]ny reduction in the amount of the first and second mortgages during the marriage by payment of marital funds would be marital property' ").  Appellee established that she used $515,000 of her separate property to release the $643,500 mortgage on the Roxbury property in March 2013.

{¶ 93} However, appellee never presented evidence regarding the value of the Roxbury property at the time she paid off the mortgage.  Appellee also did not testify that there was no equity remaining in the Roxbury property when she used her separate property to pay off the mortgage.  *See Black's Law Dictionary* 657 (10th Ed.2014) (defining "equity" as the "amount by which the value of or an interest in property exceeds secured claims or liens; the difference between the value of the property and all encumbrances on it"); *Turner v. Turner*, 6th Dist. No. L-23-1091, 2024-Ohio-2200, ¶ 83 (explaining the trial court determined the home's equity "by subtracting the remaining mortgage balance of $301,427.70 from the home's market value of $565,000"); *Hartman v. Hartman*, 9th Dist. No. 27776, 2016-Ohio-369, ¶ 7, fn. 2.  The record indicates there was some equity in the Roxbury property from 1996 to 2012 because appellant "initiated the refinanc[es]" over the years to "pull[] the equity out of the marital home" to have "[m]oney to live on."  (July 18, 2023 Tr. at 126.)

{¶ 94} Although appellee informed appellant in the May 24, 2012 email that "obviously, [the house] would end up in [her] name" after her father gave her the funds "to buy the house," these statements do not demonstrate that no equity remained in the

Roxbury property at that time. (Trial Ex. D.) The fact that the Roxbury property went into foreclosure also does not establish that the property had no equity at the time of foreclosure. *See Bennett v. Bennett*, 5th Dist. No. 04-CA-003, 2005-Ohio-1754, ¶ 29 (noting the "fact that the home is now in foreclosure does not change the amount of equity in the home"); *Soltis v. Soltis*, 8th Dist. No. 97541, 2012-Ohio-3256, ¶ 6-7 (noting that, although the wife's father paid "$135,328 to get the marital home out of foreclosure," because the "marital home [was] worth $220,000," there was $84,672 of marital equity in the home subject to division).

{¶ 95} Without evidence demonstrating that no marital equity remained in the Roxbury property in the 2012/2013 timeframe, competent, credible evidence does not support the court's conclusion that 100 percent of the sale proceeds from the Roxbury property were appellee's separate property. Appellee had the burden of proof, by a preponderance of the evidence, to trace the $666,607.46 of sale proceeds to her separate property. *Scinto* at ¶ 16, citing *Peck*. While further evidence may indeed establish that no marital equity remained in the Roxbury property during the 2012/2013 timeframe, the present record does not establish this fact.[5] The trial court could not assume the Roxbury property had no equity in the 2012/2013 timeframe without evidence to support such a finding. *See Raymond v. Raymond*, 10th Dist. No. 11AP-363, 2011-Ohio-6173, ¶ 24, citing *Richardson v. Richardson*, 10th Dist. No. 01AP-1236, 2002-Ohio-4390, ¶ 45 (explaining that "a party's failure to put on any evidence of value does not permit the court to assign an unknown as the value of a marital asset"; rather, the court should "instruct the parties to provide that evidence"); *Smith v. Smith*, 10th Dist. No. 07AP-717, 2008-Ohio-799, ¶ 10 (stating that "[a] trial court is not permitted to speculate as to the marital appreciation or mortgage principal reduction amounts without evidence to support such").

{¶ 96} The trial court also made no finding regarding whether the Roxbury property's appreciation in value from March 2013 to October 2016, if any, was the result of

---

[5] At the April 4, 2022 pretrial hearing, appellee's *counsel* informed the court that the Roxbury property "had no equity in it and was about to be foreclosed upon" in 2012. (Apr. 4, 2022 Hearing Tr. at 32.) However, the April 4, 2022 pretrial hearing was not an evidentiary hearing and statements of counsel are not evidence. *See RNG Properties, Ltd. v. Summit Cty. Bd. of Revision*, 140 Ohio St.3d 455, 2014-Ohio-4036, ¶ 28, fn. 1, quoting *Corporate Exchange Bldgs. IV & V, L.P. v. Franklin Cty. Bd. of Revision*, 82 Ohio St.3d 297, 299 (1998) (noting courts "have long held that 'statements of counsel are not evidence' "). Appellee's counsel never asked appellee during the July 18, 2023 hearing whether there was any equity remaining in the marital residence during the relevant timeframe.

passive or active appreciation. Separate property includes "[p]assive income and appreciation acquired from separate property by one spouse during the marriage." R.C. 3105.171(A)(6)(a)(iii). *See* R.C. 3105.171(A)(4) (defining "passive income" as "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse"); *Sterbenz v. Sterbenz*, 9th Dist. No. 21865, 2004-Ohio-4577, ¶ 5 (noting appreciation that occurs on property "due solely to market forces, such as location and inflation, however, is passive inflation and remains separate property"). Marital property, however, includes "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a)(iii). Thus, "[p]ost-marital appreciation on separate property that results from substantial labor, monetary or in-kind contribution of either or both spouses during the marriage is marital property." *Holman v. Holman*, 6th Dist. No. OT-96-029, 1997 Ohio App. LEXIS 3516, *5-6 (Aug. 8, 1997). *Accord Baker v. Baker*, 83 Ohio App.3d 700, 704 (9th Dist.1992).

{¶ 97} To be clear, however, competent, credible evidence in the record establishes that appellee used $515,000 of her separate property funds to pay off the mortgage on the Roxbury property. As such, appellee acquired a separate interest in the Roxbury property proportional to her $515,000 payment. She was also entitled to receive all passive appreciation accruing on her separate interest. *See Ostmann v. Ostmann*, 168 Ohio App.3d 59, 2006-Ohio-3617, ¶ 29 (9th Dist.) (stating that, because the husband used his separate property to pay off 40 percent of the mortgage on the marital residence, the husband had "a 40% separate property interest in the marital home [and] then said [passive] appreciation on that property interest remain[ed] separate property to be distributed to [the husband]"). As noted, however, without evidence addressing the amount of marital equity in the Roxbury property at the time appellee paid off the property's mortgage, we are unable to agree with the court's conclusion that appellee's separate property payment resulted in her owning 100 percent of the Roxbury property thereafter.

{¶ 98} Appellant also contends the trial court erred by finding 8 Hilltop Cottages to be appellee's separate property and by finding that he used the $122,500 he withdrew from the parties' joint account "for his own purposes." (Decree at 5.) The trial court concluded that 8 Hilltop Cottages and the $122,500 were appellee's separate property because both

came from the Roxbury sale proceeds. (Decree at 5.) Thus, the court's conclusion with respect to both 8 Hilltop Cottages and the $122,500 was premised on the court's conclusion that the entire $666,607.46 was appellee's separate property. As addressed above, however, we are compelled to reverse the court's conclusion that 100 percent of the Roxbury property sale proceeds were appellee's separate property. As such, at this time, we are further compelled to reverse the court's conclusions regarding 8 Hilltop Cottages and the $122,500.

{¶ 99} Based on the foregoing, we sustain in part and overrule in part appellant's fifth assignment of error. We affirm the court's conclusion that appellee received a separate gift from her father in 2012, that appellee used her separate property to pay off the mortgage on the Roxbury property, and that appellee acquired a separate property interest in the Roxbury property proportional to her separate property payment. However, we reverse and remand for the trial court to determine whether any marital equity remained in the Roxbury property at the time appellee used her separate property to pay off the mortgage. Following that determination, the court should determine the proportion of appellee's separate property interest in the proceeds from the sale of the Roxbury property and whether appellee adequately traced 8 Hilltop Cottages and the $122,500 to her separate property portion of the sale proceeds.

{¶ 100} In his eighth assignment of error, appellant asserts the trial court erred by issuing an order concerning the parties' income taxes because the court "[did] not have jurisdiction as to U.S. tax matters." (Appellant's Amended Brief at 57.) In the divorce decree, the court ordered that "[b]eginning in tax year 2023, the parties shall file separate tax returns. Should there be any penalties, interest, or refunds owing from any previously filed joint tax returns, the parties shall be equally responsible." (Decree at 16.)

{¶ 101} The decree did not address a United States tax matter. The decree directed the parties to file separate tax returns in 2023 because they were divorced; it did not specify in which country the parties should file their tax returns. Moreover, the court's division of any potential penalty, interest, or refund resulting from one of the parties' previously filed joint tax returns simply divided a potential liability of the marital estate. *See Norris v. Norris*, 7th Dist. No. 01 CA 173, 2002-Ohio-5211, ¶ 14 (explaining that a domestic relations "court must distribute both the tax refund and the tax liability in the property division");

*Oliver v. Oliver*, 5th Dist. No. 2011 AP 11 0044, 2012-Ohio-3483, ¶ 27. Based on the foregoing, we overrule appellant's eighth assignment of error.

## VIII. Seventh Assignment of Error – Attorney Fees

{¶ 102} In his seventh assignment of error, appellant asserts the trial court erred by awarding appellee attorney fees. The trial court awarded appellee attorney fees pursuant to both R.C. 3105.73 and 2323.51.

{¶ 103} R.C. 3105.73 provides that, in an action for divorce, "a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." R.C. 3105.73(A). In determining whether an award is equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A). We review an award of attorney fees under R.C. 3105.73(A) for an abuse of discretion. *Roush*, 2017-Ohio-840 at ¶ 32, citing *McCall v. Kranz*, 10th Dist. No. 15AP-436, 2016-Ohio-214, ¶ 27. "[A]ttorney's fees can be awarded under R.C. 3105.73 separate from, or in addition to, other statutory subsections," such as R.C. 2323.51. *Brown v. Brown*, 3d Dist. No. 14-20-24, 2021-Ohio-1932, ¶ 50. *See* R.C. 3105.73(C).

{¶ 104} R.C. 2323.51 provides that any party adversely affected by "frivolous conduct" may move the court for an award of court costs, reasonable attorney fees, and other reasonable expenses. R.C. 2323.51(B)(1). *See Filonenko v. Smock Constr., L.L.C.*, 10th Dist. No. 17AP-854, 2018-Ohio-3283, ¶ 14 (explaining that R.C. 2323.51 "serve[s] to deter abuse of the judicial process by penalizing sanctionable conduct that occurs during litigation"). The statute identifies frivolous conduct as including conduct that:

> (i) [O]bviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

> (ii) [I]s not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

R.C. 2323.51(A)(2)(a)(i) and (ii).

{¶ 105} To make an award to a party adversely affected by frivolous conduct, the court must set a date for, give notice of, and conduct a hearing "to determine whether particular conduct was frivolous, to determine, if the conduct was frivolous, whether any party was adversely affected by it, and to determine, if an award is to be made, the amount of that award." R.C. 2323.51(B)(2)(a) through (c). *See Brisco v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 18AP-109, 2019-Ohio-5318, ¶ 12. Review of a trial court's decision under R.C. 2323.51 "is one of mixed questions of law and fact." *Kellogg v. Daulton*, 10th Dist. No. 06AP-106, 2006-Ohio-4115, ¶ 13. A determination under R.C. 2323.51(A)(2)(a)(i) is a "factual determination[] and [is] therefore given deference," while a determination under R.C. 2323.51(A)(2)(a)(ii) "is a legal determination, [and] it is subject to de novo review." *Uting v. Zimmer*, 10th Dist. No. 21AP-627, 2022-Ohio-3248, ¶ 31. "[W]here a trial court finds frivolous conduct, the decision whether to assess a penalty lies within the sound discretion of the trial court." *Breen v. Total Quality Logistics*, 10th Dist. No. 16AP-3, 2017-Ohio-439, ¶ 11, citing *Judd v. Meszaros*, 10th Dist. No. 10AP-1189, 2011-Ohio-4983, ¶ 19.

{¶ 106} In this case, the trial court reviewed the R.C. 3105.73 factors and found an award of attorney fees to be equitable. (Decree at 13-14.) The court also found that appellant engaged in frivolous conduct under R.C. 2323.51 by filing several "baseless appeals" throughout the action and by continuing to file pleadings against Huntington after the court told appellant "numerous times" that Huntington "was NOT a party to the divorce action." (Emphasis sic.) (Decree at 10.) *See Gianetti v. Teakwood, Ltd.*, 10th Dist. No. 17AP-606, 2018-Ohio-1621, ¶ 15; *Carasalina L.L.C. v. Bennett*, 10th Dist. No. 14AP-74, 2014-Ohio-5665, ¶ 36. The court noted that appellee testified at trial and presented an "itemization of her attorney fees related to this case, which total[ed] $23,902.13." (Decree at 14.) The court awarded appellee $10,000 in attorney fees.

{¶ 107} Appellant asserts the trial court erred by failing to hold the R.C. 2323.51 "required evidentiary hearing as to attorney[] fees." (Appellant's Amended Brief at 56.) Appellee filed her motion for sanctions pursuant to R.C. 2323.51 on April 1, 2022, but the court did not resolve the motion while the case was pending. The court's March 9, 2023 case management order informed the parties that "[a]ll pending motions not resolved prior to trial shall be heard at trial." (Case Management/Pre-Trial Discovery Order at 3.) During

the July 17, 2023 hearing, the court noted that "[appellee's] motion for sanctions" remained pending and stated that the parties would "deal with [the motion] during trial." (July 17, 2023 Tr. at 16, 74.) Appellee testified at the July 18, 2023 trial, stating that the "entire case" was "a sham" because appellant "knew * * * he was not entitled to [her separate] property" and that appellant's various appeals lacked merit. (July 18, 2023 Tr. at 137-38.) Appellee testified regarding her attorney's fees and presented an itemized billing statement depicting the "legal fees" she "ha[d] paid" in the case. (July 18, 2023 Tr. at 137; Trial Ex. R.)

{¶ 108} Thus, the court's case management order set a date for a hearing on the motion for sanctions, appellant received notice of the date of the hearing, and the court held the hearing on the motion for sanctions during the July 18, 2023 trial. As such, the court held the hearing required by R.C. 2323.51(B)(2)(a) through (c). And, we find no error in the court's conclusion that appellant engaged in frivolous conduct or in the amount of attorney fees awarded under either R.C. 2323.51 or 3105.73.

{¶ 109} Based on the foregoing, we overrule appellant's seventh assignment of error.

## IX. Ninth Assignment of Error – Magistrate's Order

{¶ 110} In his ninth assignment of error, appellant asserts the trial court erred by adopting the magistrate's February 10, 2023 order denying his motion to compel Huntington to respond to appellant's subpoena. The magistrate denied the motion to compel, in part, because the items appellant requested on the attached exhibit A amounted to interrogatories, but "Huntington [was] not a party to this action, and therefore [could not] be served with interrogatories." (Feb. 10, 2023 Mag. Order at 2.) Appellant filed an objection to the magistrate's order and a motion to set aside the magistrate's order on February 24, 2023.

{¶ 111} On April 26, 2023, the trial court issued a decision and entry denying appellant's objection and motion to set aside the magistrate's order. The court explained that, while a party could file objections to a magistrate's decision, an objection was not a proper pleading in response to a magistrate's order. Although a motion to set aside a magistrate's order was the proper pleading, the court found appellant's motion untimely pursuant to Civ.R. 53(D)(2)(b).

{¶ 112} Civ.R. 53(D)(2)(b) provides that a motion to set aside a magistrate's order "shall be filed not later than ten days after the magistrate's order is filed." Accordingly, appellant's February 24, 2023 motion to set aside the magistrate's February 10, 2023 order was untimely. As such, the court did not err by denying appellant's motion to set aside the magistrate's order. *See Sheets v. Sheets*, 10th Dist. No. 23AP-226, 2024-Ohio-443, ¶ 10 (stating the trial court did not err in denying the motion to set aside the magistrate's order because the "motion was untimely" under Civ.R. 53(D)(2)(b)); *State ex rel. Concerned Ohio River Residents v. Mertz*, 10th Dist. No. 21AP-549, 2022-Ohio-3211, ¶ 7, 12.

{¶ 113} Appellant does not contend that his motion to set aside the magistrate's order was timely. Rather, appellant asserts the trial court erred by "finding The Huntington National Bank not a party in the Trial Court." (Appellant's Amended Brief at 58.) However, in its April 26, 2023 entry, the court did not address the magistrate's conclusion that Huntington was not a party to the case. The court denied appellant's motion to set aside the magistrate's order solely because it was untimely. Regardless, as previously addressed, appellant neither moved to join Huntington as a party defendant pursuant to Civ.R. 75(B) nor established that Huntington had possession of, control of, or an interest in marital property. Thus, Huntington was not a party to the divorce case.

{¶ 114} Based on the foregoing, we overrule appellant's ninth assignment of error.

## X. Pending Motions

### A. Motion to Strike

{¶ 115} Appellee has filed a motion to strike the documents attached to appellant's briefs in both case Nos. 23AP-554 and 24AP-72.[6] Because we have overruled appellant's assignments of error in case No. 24AP-72 and vacated the court's January 17, 2024 judgment entry, appellee's motion to strike the documents attached to appellant's brief in

---

[6] Appellee states that "none of [the attachments] were admitted as exhibits at trial * * *, with the exception of Plaintiff's Exhibit 7." (Mot. to Strike at 4.) However, we note that many of the attachments consist of documents properly contained in the trial court record. For instance, Attachment 1 to appellant's brief in case No. 23AP-554 is the trial court's September 19, 2023 judgment entry and decree of divorce. Nevertheless, some of the attachments do consist of documents that were never filed in the trial court. An appellate court "cannot add material to the record that was not a part of the trial court's proceedings and then decide the appeal on the basis of a new matter." *McGeorge v. McGeorge*, 10th Dist. No. 00AP-1151, 2001 Ohio App. LEXIS 2269, *5 (May 22, 2001), citing *State v. Ishmail*, 54 Ohio St.2d 402 (1978). Therefore, "[a]n exhibit merely appended to an appellate brief is not part of the record, and we may not consider it in determining the appeal." *State v. Grant*, 10th Dist. No. 12AP-650, 2013-Ohio-2981, ¶ 12, citing *In re D.P.*, 10th Dist. No. 12AP-557, 2013-Ohio-177, ¶ 18.

case No. 24AP-72 is rendered moot. Moreover, we have now resolved the appeal in case No. 23AP-554 and have not relied on any of the documents attached to appellant's brief that were not a part of the original papers and exhibits filed in the trial court. *See* App.R. 9(A) (stating the record on appeal consists only of the "original papers and exhibits" filed in the trial court). As such, appellee's motion to strike the documents attached to appellant's brief in case No. 23AP-554 is rendered moot as well. *See Trade Invest. Analysis Group. v. Williams Trading*, *L.L.C.*, Franklin C.P. No. 13-CV-8179, 2014 Ohio Misc. LEXIS 10443, *2 (Sept. 29, 2014) (stating that because the court "did not consider the letter" the "plaintiff's motion to strike [the letter was] MOOT") (Emphasis sic.).

### B. Motion for Sanctions & Vexatious Litigator

{¶ 116} Appellee has filed a combined R.C. 2323.51 motion for sanctions and 2323.52 motion to declare appellant a vexatious litigator. Appellee initially asks this court to find that appellant engaged in frivolous conduct pursuant to R.C. 2323.51(A)(2)(a)(i) and to award her "attorneys' fees in defending his [present] two appeals."[7] (Mot. for Sanctions at 1.) Appellant has filed a memorandum contra appellee's motion asking that we either deny the motion for sanctions or hold a hearing on the motion.

{¶ 117} In her motion for sanctions, appellee notes that appellant filed several baseless appeals while the divorce case was pending, "filed numerous pleadings caused to intentionally to delay the proceedings," and "repeatedly tried to include Huntington bank in this case without adding them as a party." (Mot. for Sanctions at 3, 6.) However, the trial court previously sanctioned appellant for his baseless appeals and his filings against Huntington. Unlike appellant's prior appeals, the current appeal from the trial court's September 19, 2023 judgment entry and decree of divorce *is* an appeal from a final appealable order. Appellee fails to identify any allegedly frivolous conduct that was not previously sanctioned by the trial court.

{¶ 118} Additionally, appellee asks this court to award her "$10,000 in attorneys' fees" because the "remedy she is entitled to under the Trial Court's *Decree of Divorce* has been stayed due to [appellant's] two pending appeals." (Emphasis sic.) (Mot. for Sanctions

---

[7] Appellee's motion for sanctions relies only on R.C. 2323.51. However, attorney fees and costs may also be awarded under App.R. 23 for a frivolous appeal. *Nigh Law Group*, *L.L.C. v. Pond Med. Ctr.*, *Inc.*, 10th Dist. No. 21AP-558, 2022 Ohio App. LEXIS 3622, (Oct. 25, 2022), fn. 2. *See* App.R. 23; *Scott Elliott Smith Co.*, *LPA v. Carasalina*, *L.L.C.*, 192 Ohio App.3d 794, 2011-Ohio-1602, ¶ 27 (10th Dist.).

at 6.) This court stayed the $10,000 attorney fee award "during the pendency of this appeal." (Oct. 19, 2023 Journal Entry case No. 23AP-554.) Accordingly, after we issue our judgment entry in the present case, the stay of the trial court's fee award will no longer be effective.

{¶ 119} Thus, because appellee does not claim that appellant engaged in frivolous conduct in the present appeals, we deny the motion for sanctions. As such, we need not hold a hearing on the motion. *See Payne v. ODW Logistics, Inc.*, 10th Dist. No. 19AP-163, 2019-Ohio-3866, ¶ 24, citing *Ohio Dept. of Adm. Servs. v. Robert P. Madison Internatl., Inc.*, 138 Ohio App.3d 388, 399 (10th Dist.2000) (noting "R.C. 2323.51 does not mandate that a trial court conduct a hearing prior to denying a motion for attorney fees").

{¶ 120} Appellee also asks that we issue an order declaring appellant to be a vexatious litigator pursuant to R.C. 2323.52, which provides that a person "who has defended against habitual and persistent vexatious conduct * * * may commence a civil action in a court of common pleas * * * to have [a] person declared a vexatious litigator." R.C. 2323.52(B). Pursuant to Civ.R. 3(A), "[a] civil action is commenced by filing a complaint with the court." Accordingly, R.C. 2323.52 "unambiguously requires a party to commence a civil action, by filing a complaint, to have the trial court declare a person a vexatious litigator." *Whipps*, 2013-Ohio-4382, at ¶ 22. "The filing of a motion in a pending case does not satisfy the requirements of R.C. 2323.52." *Id.* *Accord Kinstle v. Union Cty. Sheriff's Office*, 3d Dist. No. 14-07-16, 2007-Ohio-6024, ¶ 9 (stating that "filing a *motion* in a pending cause of action is not the equivalent of 'commencing a civil action' as intended by both R.C. 2323.52 and Civ.R. 3") (Emphasis sic); *Stallworth v. Woods*, 8th Dist. No. 107832, 2019-Ohio-2828, ¶ 30. Therefore, appellee's motion to declare appellant a vexatious litigator is procedurally deficient, and we deny the motion.

## XI. Conclusion

{¶ 121} Having overruled appellant's first, second, third, fourth, fifth, sixth, and seventh assignments of error in case No. 24AP-72, vacated the trial court's January 17, 2024 judgment entry, overruled appellant's first, second, third, fourth, sixth, seventh, eighth, and ninth assignments of error in case No. 23AP-554, but having overruled in part and sustained in part appellant's fifth assignment of error in case No. 23AP-554, we affirm in part and reverse in part the judgment entry and decree of divorce of the Franklin County

Court of Common Pleas, Division of Domestic Relations.  We remand this case to that court for proceedings in accordance with law and consistent with this decision.  Appellee's motion to strike is rendered moot, appellee's motion for sanctions and motion to declare appellant a vexatious litigator are denied.

*Judgment affirmed in part and reversed in part, motion to strike rendered moot, motion for sanctions denied, motion to declare appellant a vexatious litigator denied. January 17, 2024 judgment entry vacated in case No. 24AP-72; cause remanded.*

DORRIAN and LELAND, JJ., concur.

_____